[No. S129448. Aug. 2, 2007.]

ACTION APARTMENT ASSOCIATION, INC., et al., Plaintiffs and Appellants, v.
CITY OF SANTA MONICA, Defendant and Respondent.

1236

## COUNSEL

Law Offices of Rosario Perry, Rosario Perry, Robert J. Franklin and Dionne Marucchi for Plaintiffs and Appellants.

Heidi Palutke for California Apartment Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Nielsen, Merksamer, Parrinello, Mueller & Naylor, John E. Mueller and James R. Parrinello for San Francisco Apartment Association, San Francisco Association of Realtors and Coalition for Better Housing as Amici Curiae on behalf of Plaintiffs and Appellants.

Marsha Jones Moutrie, City Attorney, Joseph L. Lawrence, Assistant City Attorney, Barry Rosenbaum, Adam Radinsky, Cara Silver and Eda Suh, Deputy City Attorneys, for Defendant and Respondent.

Stephen L. Collier for Tenderloin Housing Clinic, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Michael Jenkins, City Attorney (West Hollywood), J. Stephen Lewis, Alison Regan; Dennis J. Herrera, City Attorney (San Francisco), Burke E. Delventhal, Wayne K. Snodgrass and Marie Crolett Blits, Deputy City Attorneys, for League of California Cities as Amicus Curiae on behalf of Defendant and Respondent.

Jones Day, Scott Bertzyk, Erik K. Swanholt, Michelle Vizurraga, Rasha Gerges; Wendy Marantz Levine, Elissa D. Barrett; and Denise McGranahan for Bet Tzedek Legal Services and Legal Aid Foundation of Los Angeles as Amici Curiae on behalf of Defendant and Respondent.

Wartelle, Weaver & Schreiber, Paul Wartelle and J. Scott Weaver for San Francisco Tenants' Union, San Francisco Housing Rights Committee, St. Peter's Housing Committee and Oakland Just Cause as Amici Curiae on behalf of Defendant and Respondent.

David R. LaBahn; Michael J. Aguirre, City Attorney (San Diego) and Cindy D. Davis, Head Deputy City Attorney, for California District Attorneys Association as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—In this case, we determine whether and to what extent the litigation privilege of Civil Code section 47, subdivision (b), conflicts with and thus preempts a section of the City of Santa Monica's "Tenant Harassment" ordinance. In relevant part, the ordinance authorizes civil and criminal penalties against a landlord who maliciously serves a notice of eviction or brings any action to recover possession of a rental unit without a reasonable factual or legal basis. The Court of Appeal held that the litigation privilege conflicts with and thus preempts the entirety of this section of the City of Santa Monica's Tenant Harassment ordinance. We conclude, however, that while the litigation privilege preempts entirely the second provision of this section regarding filing an action to recover possession of a rental unit, it preempts only partially the first provision regarding serving a notice of eviction.

### I. THE CITY'S TENANT HARASSMENT ORDINANCE

In 1979, the City of Santa Monica (City) adopted a rent control charter amendment, which established a rent control board to regulate rentals "so that rents will not be increased unreasonably and so that landlords will receive no more than a fair return." (Santa Monica City Charter, art. XVIII, § 1800.) Pursuant to this charter amendment, the rent control board adopted regulations that established a maximum percentage by which rental rates could increase each year. (*Kavanau v. Santa Monica Rent Control Bd.* (1993) 19 Cal.App.4th 730, 732 [23 Cal.Rptr.2d 724].)

In August 1995, California enacted the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; Costa-Hawkins), which established "what is known among landlord-tenant specialists as 'vacancy decontrol,' declaring that '[n]otwithstanding any other provision of law,' all residential landlords may, except in specified situations, 'establish the initial rental rate for a dwelling or unit.' (Civ. Code, § 1954.53, subd. (a).)" (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 41 [99 Cal.Rptr.2d 366].) The effect of this provision was to permit landlords "to impose whatever rent they choose at the commencement of a tenancy." (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 351 [119 Cal.Rptr.2d 741].) The Legislature was well aware, however, that such vacancy decontrol gave landlords an incentive to evict tenants that were

paying rents below market rates. (*Bullard v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488, 492 [130 Cal.Rptr.2d 819] (*Bullard*).) Accordingly, the statute expressly preserves the authority of local governments "to regulate or monitor the grounds for eviction." (Civ. Code, § 1954.53, subd. (e).)

A month later, in October 1995, the City enacted its Tenant Harassment ordinance. (Santa Monica Mun. Code, § 4.56.) When the Santa Monica City Council amended the ordinance in 1996, residents testified "that instances of tenant harassment [had] been increasing in the City since the passage of [Costa-Hawkins]—the statewide vacancy decontrol measure." (Santa Monica Ord. No. 1859ccs, § 1, subd. (a).) In addition, "[s]tatistical information supplied by the Rent Control Board staff show[ed] that since the passage of [Costa-Hawkins], controlled rental units [were] being vacated at substantially higher rates." (Santa Monica Ord. No. 1859ccs, § 1, subd. (b).)

The City's Tenant Harassment ordinance prohibits a variety of malicious acts by landlords directed at tenants in rental housing units, including prohibiting a landlord from, for example, abusing a tenant with offensive words, threatening a tenant with physical harm, or interfering with a tenant's right to quiet use and enjoyment of a rental housing unit. (Santa Monica Mun. Code, § 4.56.020.)[1] At issue in the instant case is Santa Monica Municipal Code section 4.56.020, subdivision (i)(1) (hereafter section

---

[1] Section 4.56.020 of the Santa Monica Municipal Code provides:

"No landlord shall, with respect to property used as a rental housing unit under any rental housing agreement or other tenancy or estate at will, however created, do any of the following with malice:

"(a) Interrupt, terminate or fail to provide housing services required by contract or by State, County or local housing, health or safety laws;

"(b) Fail to perform repairs and maintenance required by contract or by State, County or local housing, health or safety laws;

"(c) Fail to exercise due diligence in completing repairs and maintenance once undertaken;

"(d) Abuse the landlord's right of access into a rental housing unit as that right is specified in California Civil Code Section 1954;

"(e) Abuse the tenant with words which are offensive and inherently likely to provoke an immediate violent reaction;

"(f) Influence or attempt to influence a tenant to vacate a rental housing unit through fraud, intimidation or coercion;

"(g) Threaten the tenant, by word or gesture, with physical harm;

"(h) Violate any law which prohibits discrimination based on race, gender, sexual preference, sexual orientation, ethnic background, nationality, religion, age, parenthood, marriage, pregnancy, disability, AIDS or occupancy by a minor child;

"(i) (1) Take action to terminate any tenancy including service of any notice to quit or other eviction notice or bring any action to recover possession of a rental housing unit based upon facts which the landlord has no reasonable cause to believe to be true or upon a legal theory

4.56.020(i)(1)), which prohibits a landlord from maliciously serving a notice of eviction or bringing any action to recover possession of a rental unit without a reasonable factual or legal basis.

The ordinance provides for both criminal and civil penalties. Any person convicted of violating the ordinance is guilty of a misdemeanor and may be fined in an amount not exceeding $1,000, imprisoned for not more than six months, or both. (Santa Monica Mun. Code, § 4.56.040, subd. (a).) A civil enforcement action may be brought under the ordinance by "[a]ny person, including the City." (*Id.*, subd. (b).) Civil penalties may include the greater of statutory damages in the amount of $1,000 or actual damages, attorney fees and costs, and punitive damages. (*Id.*, subd. (d).) The ordinance also provides that a court may enjoin "[a]ny person who commits an act, proposes to commit an act, or engages in any pattern and practice which violates Section 4.56.020." (*Id.*, subd. (c).)

## II. *FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND*

In October 2002, plaintiffs Action Apartment Association, Inc., and Doreen Dennis, an owner and manager of multiunit apartment buildings in Santa Monica, filed an amended class action complaint against the City, challenging section 4.56.020(i)(1), which, as noted above, provides: "No landlord shall . . . do any of the following with malice: [¶] . . . [¶] (i)(1) Take action to terminate any tenancy including service of any notice to quit or other eviction notice or bring any action to recover possession of a rental housing unit based upon facts which the landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord."

Plaintiffs alleged that the City had "engaged in a custom and practice of threatening housing provider class members with criminal and civil prosecution . . . for simply talking to their tenants, and/or serving their tenants or having their attorneys serve their tenants with a Notice to Cure or Quit or Notice to Terminate Tenancy; and/or filing an unlawful detainer complaint or having their attorneys file an unlawful detainer complaint against their tenants." They further alleged that the City had threatened Dennis with

---

which is untenable under the facts known to the landlord, [¶] (2) This subsection shall not apply to any attorney who in good faith initiates legal proceedings against a tenant on behalf of a landlord to recover possession of a rental housing unit;

"(j) Interfere with a tenant[']s right to quiet use and enjoyment of a rental housing unit as that right is defined by California law;

"(k) Refuse to acknowledge receipt of a tenant's lawful rent payment;

"(l) Interfere with a tenant's right to privacy."

criminal and civil prosecution for "speaking to her tenant," and for directing her attorney to serve her tenant with a notice to quit and to file an unlawful detainer lawsuit for the purpose of allowing the owner to retake possession of the rental unit. Plaintiffs contended that section 4.56.020(i)(1) abridges a landlord's rights to free speech, to petition the government for redress of grievances, and to due process under the federal Constitution; violates a landlord's civil rights under title 42 United States Code section 1983; and is preempted by Code of Civil Procedure section 128.7 and the litigation privilege of Civil Code section 47, subdivision (b). With respect to their claim that the litigation privilege preempts section 4.56.020(i)(1), plaintiffs sought a writ of mandate directing the City to "vacate and annul section 4.56.020(i)(1)" as preempted by the litigation privilege. The City demurred as to each cause of action, contending that plaintiffs lacked standing and failed to state a cause of action. The trial court sustained the demurrer without leave to amend and entered judgment for the City.

The Court of Appeal reversed. Without reaching any of plaintiffs' alternative claims, it held that the entirety of section 4.56.020(i)(1) is preempted because it conflicts with the litigation privilege.[2] It reasoned that "under the litigation privilege, a landlord serving an eviction notice or filing an unlawful detainer is immune from suit based on those notices or filings, and cannot be enjoined from that conduct, even if the motivation is malicious, the factual allegations known to be untrue, and the legal theory untenable under the true facts. Under the ordinance, that same landlord, with that same lawsuit, is subject to criminal penalties, a civil lawsuit, and an injunction. The ordinance thus punishes what the Civil Code protects, is contradictory to state law, and is preempted." The Court of Appeal concluded that the litigation privilege would bar every application of section 4.56.020(i)(1). It concluded also that the litigation privilege bars criminal prosecutions brought to enforce section 4.56.020(i)(1), reasoning that "the fact that the Legislature may create

---

[2] The Court of Appeal did not reach the issue of standing, noting that the City's demurrer did not challenge plaintiffs' standing to raise the argument that the ordinance is preempted by state law. It appears from the record, however, that the City may have challenged plaintiffs' standing with respect to all causes of action. Because neither party has raised the issue of standing in this court, we do not reach it. Under article VI, section 12, subdivision (b) (article VI, section 12(b)), of the California Constitution, this court has jurisdiction to "review the decision of a court of appeal in any cause." We granted review in this case to address the sole issue considered by the Court of Appeal, whether the litigation privilege conflicts with and thus preempts section 4.56.020(i)(1). We may review this issue without first reaching the issue of standing. (See also *Dix v. Superior Court* (1991) 53 Cal.3d 442, 454, fn. 8 [279 Cal.Rptr. 834, 807 P.2d 1063] ["Nothing in article VI, section 12(b) suggests that, having rejected the Court of Appeal's conclusion on the preliminary issue of standing, we are foreclosed from 'review[ing]' the second subject addressed and resolved in its decision."].)

exemptions to a statutory privilege does not mean that the City may also do so." Additionally, the Court of Appeal directed the trial court to enter a judgment declaring that "Santa Monica Municipal Code section 4.56.020, subdivision (i) is preempted by state law."

We granted the City's petition for review to determine whether and to what extent section 4.56.020(i)(1) conflicts with and is preempted by the litigation privilege. The Court of Appeal's decision that the litigation privilege preempts section 4.56.020(i)(1) was correct only in part. The litigation privilege preempts entirely the second provision of section 4.56.020(i)(1), but preempts only partially the first provision of this section.

### III. *DISCUSSION*

■ The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. This privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Id.* at p. 212.) The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*).)

"The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]" (*Silberg, supra,* 50 Cal.3d at p. 213.) In order to achieve this purpose of curtailing derivative lawsuits, we have given the litigation privilege a broad interpretation. The litigation privilege "derives from common law principles establishing a defense to the tort of defamation." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1163 [232 Cal.Rptr. 567, 728 P.2d 1202].) "Its placement in the Civil Code immediately following the statutory provisions defining the elements of the twin defamation torts of libel and slander [citations] makes clear that, at least historically, the section was primarily designed to limit an individual's potential liability for defamation." (*Ibid.*) Beginning with *Albertson v. Raboff,* which involved an action for defamation of title, we first extended the litigation privilege to

apply to torts other than defamation. (*Albertson v. Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405] (*Albertson*).) As we observed in *Silberg*, the litigation privilege has since "been held to immunize defendants from tort liability based on theories of abuse of process [citations], intentional infliction of emotional distress [citations], intentional inducement of breach of contract [citations], intentional interference with prospective economic advantage [citation], negligent misrepresentation [citation], invasion of privacy [citation], negligence [citation] and fraud [citations]." (*Silberg, supra*, 50 Cal.3d at p. 215.)

The litigation privilege, however, is not without limit. For example, in *Albertson*, we did not extend the privilege to actions for malicious prosecution, explaining that "[t]he policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Albertson, supra*, 46 Cal.2d at p. 382.)

█ We review the Court of Appeal's determination that the litigation privilege preempts the entirety of section 4.56.020(i)(1). " 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' " (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams*), quoting *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876] (*Candid Enterprises, Inc.*).) "[A]bsent a clear indication of preemptive intent from the Legislature," we presume that local regulation "in an area over which [the local government] traditionally has exercised control" is not preempted by state law. (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].) "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption." (*Ibid.*)

State preemption of local legislation is established by article XI, section 7 of the California Constitution, which provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." In *Sherwin-Williams*, this court identified three types of conflict that cause preemption: " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin-Williams, supra*, 4 Cal.4th at pp. 897–898, quoting *Candid Enterprises, Inc., supra*, 39 Cal.3d at p. 885.) Local legislation "is 'contradictory' to general law when it is inimical thereto." (*Sherwin-Williams*, at p. 898; see *Ex parte Daniels* (1920) 183 Cal. 636, 641–648 [192 P. 442] [a city

ordinance that set a lower maximum speed than the maximum speed permitted by state law was preempted].) A local ordinance is preempted by a state statute only to the extent that the two conflict. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 304 [219 Cal.Rptr. 467, 707 P.2d 840] (*Cohen*); see also *Peatros v. Bank of Am.* (2000) 22 Cal.4th 147, 173, fn. 6 [91 Cal.Rptr.2d 659, 990 P.2d 539] (*Peatros*).)

Plaintiffs argue that the litigation privilege is inimical to and thus preempts (1) the provision of section 4.56.020(i)(1) authorizing a suit based on a defendant bringing "an action to recover possession of a rental housing unit based upon facts which the landlord had no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord" and (2) the provision of this section authorizing a suit based on "serving any notice to quit or other eviction notice" without a reasonable factual or legal basis.

A. *An Action to Recover Possession of a Rental Unit*

Plaintiffs allege that the City has threatened action against Dennis pursuant to section 4.56.020(i)(1) based on her direction to her attorney to file an unlawful detainer lawsuit for the purpose of allowing her to retake possession of a rental unit. This alleged threatened action would arise under the second provision of section 4.56.020(i)(1), which provides: "No landlord shall . . . do any of the following with malice: [¶] . . . [¶] (i)(1) Take action to terminate any tenancy including . . . *bring any action to recover possession of a rental housing unit* based upon facts which the landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord." (Italics added.) When considering whether this provision of section 4.56.020(i)(1) is preempted, we ask whether it conflicts with the litigation privilege. (*Sherwin-Williams, supra,* 4 Cal.4th at pp. 897–898.)

This provision of section 4.56.020(i)(1) is inimical to the important purposes of the litigation privilege. First among these is "afford[ing] litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]" (*Silberg, supra,* 50 Cal.3d at p. 213.) Whether actions pursuant to this provision of section 4.56.020(i)(1) are brought by the City, a third party, or a tenant, such actions alleging that a landlord had improperly filed an action to recover possession of rental housing would severely restrict landlords' freedom of access to the courts.

We recognize that the City enacted its Tenant Harassment ordinance for the legitimate government purpose of protecting the City's residents from abuse by landlords. As described above, the City was motivated by the then recently enacted Costa-Hawkins, which provided an incentive for landlords improperly to cause tenants to vacate rental units, and evidence that, after the passage of Costa-Hawkins, instances of tenant harassment increased and rent-controlled units were vacated at higher rates. (Santa Monica Ord. No. 1859ccs, § 1, subds. (a) & (b).) However, that the City was motivated by a legitimate government purpose does not justify its enforcement of a law that discourages *all* landlords, including those motivated by honest intentions, from initiating unlawful detainer actions. The City's enforcement of the provision of section 4.56.020(i)(1) that creates a civil and criminal cause of action based on the act of initiating litigation would cut against the litigation privilege's "core policy" of protecting access to the courts. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1198 [17 Cal.Rptr.2d 828, 847 P.2d 1044] (*Rubin*).) Knowing that the City or any other person could bring an action under section 4.56.020(i)(1), even against a landlord who *prevailed* in an unlawful detainer action, would have a chilling effect on landlords pursuing evictions through the courts.

■ This and other courts have emphasized the importance of the litigation privilege's absolute protection of access to the courts, while recognizing that this absolute protection has its costs. " '[It] is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .' " (*Silberg, supra,* 50 Cal.3d at p. 214, quoting *Thornton v. Rhoden* (1966) 245 Cal.App.2d 80, 99 [53 Cal.Rptr. 706].) " '[W]hen there is a good faith intention to bring a suit, even malicious publications "are protected as part of the price paid for affording litigants the utmost freedom of access to the courts." ' " (*Mattco Forge, Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392, 405 [6 Cal.Rptr.2d 781].) Additionally, "in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Silberg, supra,* 50 Cal.3d at p. 214.)

■ In arguing that section 4.56.020(i)(1) is not preempted by the litigation privilege, the City first would have us evaluate section 4.56.020(i)(1) as if it had been enacted by the Legislature, noting that landlord-tenant relations is an area of the law in which the Legislature expressly allows local governments to act. The City is correct only insofar as it observes that this

and other courts have held that state law allows municipal governments the authority to enact and enforce particular local laws governing landlord-tenant relations, including those related to evictions and rent control. (See, e.g., *Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952 [81 Cal.Rptr.2d 93, 968 P.2d 993]; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 707–708 [209 Cal.Rptr. 682, 693 P.2d 261]; *Birkenfeld v. Berkeley* (1976) 17 Cal.3d 129, 148–149 [130 Cal.Rptr. 465, 550 P.2d 1001]; *Bullard, supra,* 106 Cal.App.4th 488.) That state legislation allows local governments to adopt laws regulating evictions, however, does not give those local laws the force of state law.

The Legislature also has included savings clauses in rental housing legislation, preserving the authority of local governments to regulate in this area. These clauses are not intended to give local ordinances additional force or to expand the authority of local governments, but instead are intended only to preserve their existing authority. Costa-Hawkins provides that "[n]othing in this section shall be construed to *affect* any authority of a public entity that may otherwise exist to regulate or monitor the grounds for eviction." (Civ. Code, § 1954.53, subd. (e), italics added.) This section "is a strong statement that the state law establishing vacancy decontrol *is not meant to affect the authority* of local governments to monitor and regulate the grounds for eviction, in order to prevent pretextual evictions." (*Bullard, supra,* 106 Cal.App.4th at p. 492, italics added.) Legislation enacted in 2003 that prohibits a landlord from engaging in specified conduct in order to encourage a tenant to vacate a dwelling includes a similar savings clause. (Civ. Code, § 1940.2, subd. (d).) However, we see nothing in these narrowly focused savings clauses that is designed to give local governments the new and additional authority to adopt ordinances limiting state laws of general application, including the litigation privilege.

Second, the City contends that the privilege does not apply to criminal prosecutions, whether brought pursuant to state statute or local ordinance. We disagree. The City correctly notes that on more than one occasion we have treated it as obvious that the litigation privilege does not bar certain government actions, including criminal prosecutions and regulatory actions brought pursuant to state statutes. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361 [7 Cal.Rptr.3d 803, 81 P.3d 244] (*Hagberg*); *Rubin, supra,* 4 Cal.4th at p. 1198; *Silberg, supra,* 50 Cal.3d at pp. 218–219.) However, these exceptions to the privilege have all involved suits brought under state laws, each of which makes clear that the Legislature did not intend its enforcement to be barred by the litigation privilege. Local governments do not have the same authority to create exceptions to the litigation privilege.

■ We have observed that the litigation privilege does not apply to the following crimes: perjury (Pen. Code, § 118 et seq.); subornation of perjury (*id.*, § 127); criminal prosecution under Business and Professions Code section 6128; false report of a criminal offense (Pen. Code, § 148.5); and "attorney solicitation through the use of 'runners' or 'cappers' " (*Rubin, supra*, 4 Cal.4th at p. 1198, quoting Bus. & Prof. Code, §§ 6152–6153; see *Silberg, supra*, 50 Cal.3d at pp. 218–219; *Hagberg, supra*, 32 Cal.4th at p. 361). State Bar discipline of attorneys who engage in solicitation and enforcement of the antisolicitation statute is also excepted from the litigation privilege. (*Rubin, supra*, 4 Cal.4th at p. 1198.) Our recognition that prosecutions of these crimes and specified State Bar actions are not barred by the litigation privilege does not reflect that an exception for criminal prosecutions is inherent in the litigation privilege itself. Instead, our recognition of these exceptions to the litigation privilege has been guided by the "rule of statutory construction that particular provisions will prevail over general provisions." (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33]; see Code Civ. Proc., § 1859.)

Each of the above mentioned statutes is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege. The crimes of perjury[3] and subornation of perjury[4] would be almost without meaning if statements made during the course of litigation were protected from prosecution for perjury by the litigation privilege. The misdemeanors established by Business and Professions Code section 6128 evince a legislative intent that certain attorney conduct not be protected from prosecution by the litigation privilege: "Every attorney is guilty of a misdemeanor who either: [¶] (a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. [¶] (b) Willfully delays his client's suit with a view to his own gain. [¶] (c) Willfully receives any money or allowance for or on account of any money which he has not laid out or become answerable for." Although tort liability may not be imposed when a person contacts law enforcement to report suspected criminal activity, the Legislature has provided that a person may be prosecuted for a misdemeanor for reporting to a

---

[3] "Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury." (Pen. Code, § 118, subd. (a).)

[4] "Every person who willfully procures another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury so procured." (Pen. Code, § 127.)

peace officer, deputy attorney general, district attorney, or other specified official "that a felony or misdemeanor has been committed, knowing the report to be false." (Pen. Code, § 148.5, subd. (a); see *Hagberg, supra,* 32 Cal.4th at p. 361.) Similarly, while attorney solicitation may not be the basis for tort liability, the Legislature has specified that certain attorney solicitation in or near prisons, hospitals, courts and other designated locations is a crime. (Bus. & Prof. Code, §§ 6152–6153; *Rubin, supra,* 4 Cal.4th at p. 1198.) As we observed in *Rubin,* the Legislature has also charged the State Bar with disciplining attorneys who engage in solicitation and enforcement of the antisolicitation statute. (*Rubin, supra,* 4 Cal.4th at p. 1198.)

In all of the above examples, we found exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws. Fundamental to the doctrine of preemption is the distinction between state and local laws: local governments lack the authority to craft their own exceptions to general state laws. (Cal. Const., art. XI, § 7.)

Third, the City suggests that any claims brought by parties not involved in the underlying litigation, including government entities, are not barred by the privilege. The City relies on *Rubin, supra,* 4 Cal.4th 1187, in which we held that claims brought by a co-owner of a mobilehome park against a park resident and her attorney for soliciting other residents as clients in anticipated litigation against the co-owner regarding park conditions were barred by the litigation privilege, including a claim for injunctive relief under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; see *Rubin, supra,* 4 Cal.4th at pp. 1198, 1204). We stated in dictum "that the policy underlying the unfair competition statute can be vindicated by multiple parties other than plaintiff," including the Attorney General, district attorneys, certain city attorneys, and "members of the public who, unlike plaintiff, are not adversaries in collateral litigation involving the same attorneys." (*Rubin,* at p. 1204.) This dictum does not support the City's argument that parties not involved in the underlying litigation are not barred by the litigation privilege from bringing actions pursuant to section 4.56.020(i)(1). In *Rubin,* we considered the application of the litigation privilege to actions brought pursuant to the unfair competition law, a state statute, whereas here we consider its application to actions brought pursuant to a local ordinance. As stated above, local governments may not create their own exceptions to the litigation privilege.

■ While the Legislature remains free to create exceptions to the litigation privilege, for parties to the underlying litigation and others, we decline to recognize a broad exception to the litigation privilege for any party who did not participate in the underlying litigation. An exception to the litigation privilege for all suits brought by parties who were not involved in the underlying litigation would be antithetical to the privilege's purposes. The

litigation privilege "has been referred to as 'the backbone to an effective and smoothly operating judicial system.' " (*Silberg, supra,* 50 Cal.3d at pp. 214–215, quoting *McClatchy Newspapers, Inc. v. Superior Court* (1987) 189 Cal.App.3d 961, 970 [234 Cal.Rptr. 702].) It "promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings." (*Silberg, supra,* 50 Cal.3d at p. 213.) We have observed that an " 'external threat of liability is destructive of [the] fundamental right [of access to judicial and quasi-judicial proceedings] and inconsistent with the effective administration of justice.' " (*Ibid.*) The litigation privilege is meant to protect more than the parties to a lawsuit from derivative suits that they might later bring against each other. Derivative litigation brought by parties who did not participate in the underlying litigation, like litigation brought by parties who did participate, would pose an external threat of liability that would deter potential litigants, witnesses, and others from participating in judicial proceedings.

■ Fourth, the City contends that the litigation privilege does not apply to an action brought under the ordinance because eviction notices and actions are noncommunicative conduct. A threshold issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211 [271 Cal.Rptr. 191, 793 P.2d 524].) "The distinction between communicative and noncommunicative conduct hinges on the *gravamen of the action.* [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an *act that was communicative in its essential nature.* [Citations.] The following acts have been deemed communicative and thus protected by the litigation privilege: attorney prelitigation solicitations of potential clients and subsequent filing of pleadings in the litigation [citation], and testimonial use of the contents of illegally overheard conversation [citation]. The following acts have been deemed noncommunicative and thus unprivileged: prelitigation illegal recording of confidential telephone conversations [citation]; eavesdropping on a telephone conversation [citation]; and physician's negligent examination of patient causing physical injury [citation]." (*Rusheen, supra,* 37 Cal.4th at p. 1058, italics added.)

The City argues that the gravamen of initiating an eviction action is improperly terminating a tenancy because such initiations, without more, frequently cause tenants to terminate their tenancies. It argues that a landlord who violates section 4.56.020(i)(1) engages in a "course of conduct designed to wrest a tenant from his or her home without complying with legal requirements." We have drawn "a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication." (*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870,

888 [221 Cal.Rptr. 509, 710 P.2d 309].) "As a general rule, the privilege ' "applies only to communicative acts and does not privilege tortious courses of conduct." ' " (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 830 [135 Cal.Rptr.2d 1, 69 P.3d 927], quoting *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 345 [60 Cal.Rptr.2d 539].) For example, in *LiMandri*, the Court of Appeal held that the litigation privilege did not bar plaintiff's "cause of action for intentional interference with contractual relations because it [was] based upon an alleged tortious course of conduct," including the preparation and execution of documents creating a security interest in a portion of settlement proceeds and the "refusal to concede the superiority of [plaintiff's] contractual lien." (*LiMandri, supra*, 52 Cal.App.4th at p. 345.)

The gravamen of the City's alleged action arising under the provision of section 4.56.020(i)(1) that prohibits a landlord from bringing an action to recover possession of a rental unit, is not a course of conduct. An action brought pursuant to this provision of the ordinance is necessarily based on the filing of a legal action, which by its very nature is a communicative act. The filing of a legal action is not "an independent, noncommunicative, wrongful act." (*Rusheen, supra*, 37 Cal.4th at p. 1065.) We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action.

Finally, the City suggests that "in cases brought under [section 4.56.020(i)(1)] where the tenant has already prevailed in a groundless and malicious unlawful detainer lawsuit, the three conditions required to bring a malicious prosecution action are satisfied" and thus the litigation privilege does not apply. As noted above, we have recognized an exception to the litigation privilege for the tort of malicious prosecution because "the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Albertson, supra*, 46 Cal.2d at p. 382.) However, section 4.56.020(i)(1) does not require that all three of the conditions of malicious prosecution be met. Favorable termination is not an element of a cause of action under section 4.56.020(i)(1), and we need not address whether a similar ordinance that included this element would be excepted from the litigation privilege. A tenant who has successfully defended against an eviction action may, of course, bring an action for malicious prosecution.

■ For the foregoing reasons, we conclude that the litigation privilege conflicts with and, thus, preempts the provision of section 4.56.020(i)(1) authorizing a suit based on a defendant bringing "an action to recover possession of a rental housing unit based upon facts which the landlord had

no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord."[5]

B. *Notice of Eviction in Order to Recover Possession of a Rental Unit*

Plaintiffs also allege that the City has threatened action against Dennis pursuant to section 4.56.020(i)(1) for directing her attorney to serve her tenant with a notice to quit for the purpose of allowing the owner to retake possession of the rental unit. This alleged threatened action is authorized by the first provision of section 4.56.020(i)(1), which provides: "No landlord shall . . . do any of the following with malice: [¶] . . . [¶] (i)(1) Take action to terminate any tenancy including *service of any notice to quit or other eviction notice* . . . based upon facts which the landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the landlord." (Italics added.) When considering whether this provision of section 4.56.020(i)(1) also is preempted, we ask whether it, too, conflicts with the litigation privilege. (*Sherwin-Williams, supra,* 4 Cal.4th at pp. 897–898.)

■   This provision of section 4.56.020(i)(1) conflicts only in part with the litigation privilege. The privilege applies only to a "publication or broadcast" made as part of a "judicial proceeding." (Civ. Code, § 47, subd. (b).) A notice of eviction is a communication regarding prospective litigation, and, as such, it is not necessarily part of a judicial proceeding. (See, e.g., *Edwards v. Centex*

---

[5] In dissent, Justice Corrigan agrees with our conclusion "that the policies underlying the privilege tend to support its application in this context." (Dis. opn. of Corrigan, J., *post*, at p. 1253.) She disagrees, however, with our conclusion that the litigation privilege preempts this provision of the City's Tenant Harassment ordinance. She suggests that the Legislature did not enact the litigation privilege "to invalidate any particular causes of action." (*Id.*, at p. 1254.) On this point, the dissent misconstrues both the role of declaratory relief and the nature of preemption.

In this case, plaintiffs did not wait until the City brought an action under the relevant provisions of the Tenant Harassment ordinance to raise the defense of the litigation privilege, but instead sought prospective relief declaring that the litigation privilege would be a successful defense to such an action. It is well established that parties may seek declaratory relief with respect to the interpretation and application of local ordinances. (See, e.g., *Walker v. County of Los Angeles* (1961) 55 Cal.2d 626, 637 [12 Cal.Rptr. 671, 361 P.2d 247] ["The interpretation of ordinances and statutes are proper matters for declaratory relief."]; *California Water & Tel. Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 24 [61 Cal.Rptr. 618] ["A person need not violate or plan to violate a penal ordinance before he can obtain a declaration construing it and deciding its application to him."].) It is also well established that preemption, like other affirmative defenses, may be raised in a complaint seeking declaratory or other prospective relief. (*Malish v. City of San Diego* (2000) 84 Cal.App.4th 725 [101 Cal.Rptr.2d 18]; *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374 [119 L.Ed.2d 157, 112 S.Ct. 2031].) Thus, we do not convert the litigation privilege from a "shield" into a "sword," as Justice Corrigan contends, but instead clarify when the use of the litigation privilege as a "shield" is effective. (Dis. opn. of Corrigan, J., *post*, at p. 1253.)

*Real Estate Corp.* (1997) 53 Cal.App.4th 15, 30 [61 Cal.Rptr.2d 518] (*Edwards*).) As described below, courts have developed a test for determining when a communication regarding prospective litigation is subject to the litigation privilege. Because this test involves a question of fact, it is impossible to conclude, as the Court of Appeal did, that every action brought pursuant to the notice provision necessarily would be barred by the litigation privilege.

■ To be protected by the litigation privilege, a communication must be "in furtherance of the objects of the litigation." (*Silberg*, *supra*, 50 Cal.3d at p. 219.) This is "part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." (*Id*. at pp. 219–220.) A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1381 [88 Cal.Rptr.2d 802] (*Eisenberg*); *Edwards*, *supra*, 53 Cal.App.4th at p. 36; *Laffer v. Levinson* (1995) 34 Cal.App.4th 117, 124 [40 Cal.Rptr.2d 233] (*Laffer*); *Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 421 [225 Cal.Rptr. 140, 231 Cal.Rptr. 113] (*Fuhrman*), disapproved on other grounds in *Silberg*, *supra*, 50 Cal.3d at p. 219; Rest.2d Torts, § 586, com. e, p. 248.)

The policy supporting the litigation privilege is furthered only if litigation is seriously considered: "It is important to distinguish between the lack of a good faith intention to bring a suit and publications which are made without a good faith belief in their truth, i.e., malicious publications. The latter, when made in good faith anticipation of litigation, are protected as part of the price paid for affording litigants the utmost freedom of access to the courts. This policy consideration is not advanced, however, when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has no 'connection or logical relation' to an action and is not made 'to achieve the objects' of any litigation [citation]. No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation." (*Fuhrman*, *supra*, 179 Cal.App.3d at p. 422, fn. 5; accord, *Edwards*, *supra*, 53 Cal.App.4th at p. 36; *Laffer*, *supra*, 34 Cal.App.4th at p. 124.)

■ Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact. For example, in *Eisenberg*, the Court of Appeal held that the trial court erred in granting summary judgment on the basis of the litigation privilege because "[i]t remain[ed] a triable issue of fact whether . . . imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the dispute between [the parties]." (*Eisenberg*, *supra*, 74

Cal.App.4th at p. 1381; see also *Edwards, supra,* 53 Cal.App.4th at p. 35, fn. 10; *Fuhrman, supra,* 179 Cal.App.3d at p. 422.) Because a factual inquiry is required in order to determine whether a particular eviction notice is privileged, it is impossible to conclude that the litigation privilege would bar every action arising under the provision of section 4.56.020(i)(1) authorizing suits based on unfounded notices of eviction. Here, plaintiffs' complaint offers very little description of the City's threatened action or the notice of eviction that Dennis allegedly served on her tenant.

Because a factual inquiry is required in order to determine whether a particular eviction notice is privileged, the Court of Appeal erred in its holding that this provision of section 4.56.020(i)(1) is entirely preempted by the litigation privilege. This provision is preempted only to the extent that it actually conflicts with the litigation privilege. (*Cohen, supra,* 40 Cal.3d at p. 304; *Peatros, supra,* 22 Cal.4th at p. 173, fn. 6.) That is, this provision of section 4.56.020(i)(1) conflicts with, and is preempted by, the litigation privilege to the extent it prohibits, criminalizes, and establishes civil penalties for eviction notices where litigation is contemplated in good faith and under serious consideration.[6] Accordingly, we reverse the Court of Appeal's judgment to the extent that it directs the superior court to enter a judgment declaring that section 4.56.020(i)(1) is preempted by the litigation privilege.

## IV. DISPOSITION

We affirm the judgment of the Court of Appeal to the extent that it reverses the superior court's order sustaining the demurrer without leave to amend and reverses the resulting judgment of dismissal, but reverse the Court of Appeal's judgment to the extent that it directs the superior court to enter a judgment declaring that section 4.56.020(i)(1) is preempted by the litigation

---

[6] In dissent, Justice Corrigan suggests that our opinion is inconsistent in that we hold that the provision of section 4.56.020(i)(1) authorizing suits based on unfounded notices of eviction is only partially preempted, based on the particular factual circumstances, but hold that the provision of section 4.56.020(i)(1) based on a defendant's bringing an eviction action is entirely preempted, regardless of whether the elements of malicious prosecution have been met. This argument overlooks the distinction between factual and legal questions. The analysis required to determine whether the litigation privilege applies to a prelitigation communication involves a question of fact. In contrast, the question whether an action under the provision of section 4.56.020(i)(1) based on an eviction action contains the same elements as a malicious prosecution action, and is therefore exempt from the litigation privilege, is a question of law requiring a categorical determination. As explained above, the fact that an eviction action was terminated in the tenant's favor does not alter that determination. This additional fact does not transform an action under the provision of section 4.56.020(i)(1) based on a defendant bringing an eviction action into one that is "analogous" to malicious prosecution (dis. opn. of Corrigan, J., *post,* at p. 1255, fn. 2), such that we could recognize a categorical exception to the litigation privilege as a matter of law, because the ordinance does not require all of the elements of a malicious prosecution action.

privilege. We remand the matter to the Court of Appeal for further proceedings consistent with the views expressed in this opinion.

George, C. J., Kennard, J., Baxter, J., and Chin, J., concurred.

**CORRIGAN, J.,** Dissenting.—I respectfully dissent from the opinion of my colleagues. There is no conflict between the litigation privilege and the City of Santa Monica's "Tenant Harassment" ordinance. Had the city attempted to create some version of a privilege at odds with Civil Code section 47, subdivision (b), that law would have been preempted. But the ordinance before us does not interfere with the operation of the litigation privilege. It is not "inimical" to the privilege in the relevant sense; it "does not prohibit what the statute commands or command what it prohibits." (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 902 [16 Cal.Rptr.2d 215, 844 P.2d 534].) Landlords are free to raise the litigation privilege in actions brought under the ordinance, and in such cases the scope of the defense could properly be explored and established. The majority, however, wields the defense not as the shield it was intended to be but as a sword against the legislative authority of local government. Doing so, it distorts both the doctrine of preemption and the privilege itself.

The majority states the rule we recently reaffirmed in *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139 [45 Cal.Rptr.3d 21; 136 P.3d 821]: "[A]bsent a clear indication of preemptive intent from the Legislature," we presume that local regulation "in an area over which [the local government] traditionally has exercised control" is not preempted by state law. (*Id.* at p. 1149; see maj. opn., *ante,* at p. 1242.) However, the majority does not follow this rule. By no stretch of logic or language can it be said that when the Legislature enacted the litigation privilege, it intended to invalidate local regulations penalizing landlords for bad faith conduct in legal disputes with their tenants. (Cf. *Cacho v. Boudreau* (2007) 40 Cal.4th 341, 349–355 [53 Cal.Rptr.3d 43, 149 P.3d 473].)

As the majority explains, the privilege was enacted as a limitation on defamation liability, and has been expanded by judicial decision to apply to a wide range of tort actions other than malicious prosecution. (Maj. opn., *ante,* at p. 1242.) Now, the majority further extends the privilege to apply to causes of action brought under Santa Monica's Tenant Harassment ordinance. I would be sympathetic to such an extension were the privilege raised as a defense in an appropriate case. I agree with the majority that the policies underlying the privilege tend to support its application in this context. However, the privilege merely provides immunity from liability. It does not operate to abolish the underlying cause of action; it simply limits the availability of the remedy in particular circumstances. (See, e.g., *Rusheen v.*

*Cohen* (2006) 37 Cal.4th 1048, 1063 [39 Cal.Rptr.3d 516, 128 P.3d 713] ["the litigation privilege . . . narrows the scope of the tort of abuse of process in the judgment enforcement context"].)

Thus, there are two separate reasons why it cannot logically be said that the litigation privilege was intended by the Legislature to preempt local legislation. First, the privilege was enacted as a defense to defamation claims, and while its scope has been enlarged by the courts, it has thus far not been applied beyond the tort liability context. The Legislature's failure to limit the reach of Civil Code section 47, subdivision (b) may be taken as an indication that it approves a broad application of the privilege in tort cases (see *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 369 [7 Cal.Rptr.3d 803, 81 P.3d 244]), but no such implication may be indulged, as yet, with regard to causes of action arising under local ordinances.

Second, the Legislature plainly intended to provide immunity for communications made in connection with judicial proceedings, not to invalidate any particular causes of action. The majority cites no case in which a statute providing a defense has been held to preempt an ordinance providing a remedy. There is no reason for such a holding; the defense may simply be raised in an enforcement action and given its appropriate application, without violating the presumption favoring the validity of the ordinance against an attack of state preemption. (See *Big Creek Lumber Co. v. County of Santa Cruz, supra*, 38 Cal.4th at p. 1149; for a discussion of the analogous federal preemption doctrine, see *Viva! International Voice for Animals v. Adidas Promotional Retail Operations* (2007) 41 Cal.4th 929 [63 Cal.Rptr.3d 50, 162 P.3d 569].)[1]

The majority opinion is not only inconsistent with the principles of preemption and privilege; it is also internally inconsistent. Insofar as the ordinance applies to actions to recover possession, the majority holds it is flatly preempted. In response to the city's argument that the privilege would not apply to actions that meet the requirements for a malicious prosecution claim, the majority notes that (1) the ordinance is not limited to the circumstances in which a malicious prosecution action would lie, and (2) the tenant is free to bring a malicious prosecution action if the requisite elements are satisfied. (Maj. opn., *ante*, at p. 1249.) However, insofar as the ordinance applies to eviction notices, the majority takes a different tack. Because the courts have limited the scope of the litigation privilege in tort actions arising

---

[1] The majority responds that declaratory relief may be sought to test the interpretation of local ordinances, and that preemption is itself a defense that may be raised in such a proceeding. (Maj. opn., *ante*, at p. 1250, fn. 5.) I have no quarrel with these observations. I note only that the majority refers to no instance in which a statutory defense has been applied preemptively to an entire category of actions.

from prelitigation communications, the majority reasons that the privilege is similarly limited in actions brought under the ordinance, resulting in only partial preemption.

If the policy considerations supporting the maintenance of some tort claims based on prelitigation communications are sufficient to permit some claims under the ordinance to go forward, would not the policy considerations supporting the maintenance of malicious prosecution actions also justify permitting claims under the ordinance by tenants who can establish the elements of malicious prosecution? Or conversely, would not all claims based on prelitigation notices be preempted, because (1) the ordinance is not limited to circumstances in which the privilege would not apply, and (2) tenants are free to bring tort actions (for instance, abuse of process or infliction of emotional distress) if a landlord's eviction notices are not privileged?[2]

If this inconsistency were reconciled in favor of preserving some causes of action under the ordinance, there would in a sense be little practical difference between my position and the majority's. The availability of a defense to an action brought under the ordinance would be litigated on a case-by-case basis, either as a matter of privilege or as a matter of preemption. However, I would still dissent. It is a bad idea for courts to loosely employ preemption doctrine to explore whether a local ordinance is "inimical" to state law. (See *Viva! International Voice for Animals v. Adidas Promotional Retail Operations, supra,* 41 Cal.4th at pp. 939–940.) The constitutional prerogative of local lawmakers is entitled to more respect than that. (Cal. Const., art. XI, § 7.)

---

[2] The majority suggests that privilege in the prelitigation communications context presents questions of fact, whereas privilege in the context of actions to recover possession presents only a legal question. (Maj. opn., *ante,* at p. 1252, fn. 6.) However, the majority does not squarely answer the legal question raised by the city regarding actions to recover possession. As noted by the majority, this court has declared that "[t]he policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]; see maj. opn., *ante,* at p. 1242; see also, e.g., *Rubin v. Green* (1993) 4 Cal.4th 1187, 1203 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) The city contends that when a tenant successfully defends an action to recover possession, these elements are satisfied because malice on the part of the landlord and lack of probable cause are necessary conditions for a suit under the ordinance. (For the relevant terms of the ordinance, see maj. opn., *ante,* at pp. 1238–1239, fn. 1.)

This is certainly a colorable argument; it deserves considerably more analysis than is provided by the majority. I would prefer that we leave the question for a case in which a plaintiff actually brings such a claim. If the city's position were accepted, each case would of course turn on its own facts. My point here is only that the majority does not consider whether the justification for an exception to the privilege in malicious prosecution actions would support an exception for analogous actions under the ordinance, while it accepts without question the policy justifications developed in tort cases arising from prelitigation communications.

I would not hold the drafters of ordinances to the standard of framing their provisions to avoid conflict with any conceivable defense available under state law. To take only the examples nearest at hand, Civil Code section 47, subdivision (b) provides a privilege for publications made in official proceedings, in addition to the litigation privilege. Civil Code section 47, subdivision (a) provides a privilege for statements made "[i]n the proper discharge of an official duty." Under the court's decision today, these provisions stand as limitations on the scope of local legislative power, rather than as the sources of individual privilege they were meant to be.

Werdegar, J., concurred.