Filed 5/5/23  Dawodu v. Meneses CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TOYIN DAWODU, | |
| Plaintiff and Appellant, | E077848 |
| v. | (Super. Ct. No. CVPS2100517) |
| GENE A. MENESES et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.
Affirmed.

Toyin Dawodu, in pro. per. for Plaintiff and Appellant.

Haight Brown & Bonesteel, Arezoo Jamshidi and Jennifer K. Saunders, for
Defendants and Respondents.

1

# I.

## INTRODUCTION

Toyin Dawodu appeals the trial court's order striking his complaint as a strategic lawsuit against public participation (SLAPP) under the anti-SLAPP statute, Code of Civil Procedure section 425.16 (section 425.16). We affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Dawodu owns Guaranty Investment Company, Inc. (GIC). He alleges that GIC bought a property in Cathedral City, where Nicole Pisciuneri was living at the time. According to Dawodu, Pisciuneri agreed to rent the property but never paid any rent, so GIC filed an unlawful detainer action against her (the UD action).

Pisciuneri received legal assistance from the Inland Empire Latino Lawyers Association, Inc. (IELLA) and one of its attorneys, Gene Arthur Meneses, as well as IELLA's Executive Director, Sylvia Quistorf. Meneses represented Pisciuneri in the UD action and successfully obtained judgment in her favor.

Pisciuneri later filed a lawsuit to quiet title to the property. She alleged that she had lived at the property for 23 years and her deceased mother had gifted her the

---

[1] The factual summary is drawn from Dawodu's operative complaint and the parties' evidence submitted in connection with respondents' anti-SLAPP motion. (See § 425.16, subd. (b)(2) [in ruling on an anti-SLAPP motion, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"]; see also *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

property. Pisciuneri also asserted that her brother, acting as trustee of their mother's estate, breached his fiduciary duty by selling the property to Dawodu for substantially less than its fair market value.

Without the help of an attorney, Pisciuneri filed a request for a civil harassment restraining order against Dawodu. She alleged that Dawodu and three men broke into her home. She also claimed that Dawodu sent people to sit outside her home late at night, ring the doorbell, and put papers on the door. The trial court denied Pisciuneri's request for a restraining order because the quiet title action was still pending.

Dawodu responded by filing a complaint against Pisciuneri, Meneses, Quistorf, and IELLA, alleging claims for (1) breach of duty of care, (2) intentional misrepresentation, (3) fraud, (4) false light, (5) negligence, and (6) infliction of emotional distress. Dawodu asserted all of his claims against all respondents, except for the first, which he asserted against all respondents except Pisciuneri.

Each claim is based on respondents' involvement in the UD action and Pisciuneri's request for a restraining order.[2] The first claim alleges that Meneses, Quistorf, and IELLA "had a duty to only assist [Pisciuneri] with her paperwork" and to "to ethically advise [Pisciuneri] not to file a restraining order against [Dawodu]," but they "helped her fabricate [Pisciuneri's] lies and prepared the restraining order for [her]."

---

[2] Nearly all of each claim's allegations consists of quotations from legal authority and statements of law, not factual allegations. We identify only the salient factual allegations here.

3

The second claim alleges that Pisciuneri "intentionally misrepresented herself to the Court and to the other [respondents]," which "induced [them] to file a legal action on her behalf." The claim also alleges that "all [respondents], once informed about the truth of the facts continued to take legal action against [Dawodu] knowing the allegations were not true."

The third claim alleges that Pisciuneri "concealed the truth from the other [respondents] but offered the truth later on." However, "when the other [respondents] found out the truth that [Pisciuneri] was lying, they still encouraged [her] to pursue legal action."

The fourth claim alleges that respondents "represented false facts to present [Dawodu] in false light." In particular, respondents "willfully and intentionally filed a restraining order against [Dawodu] knowing that [he] was the rightful owner of the property," which "intentionally cr[e]ated a false impression of [him]."

The fifth claim alleges that respondents "were negligent in intentionally bringing legal action against [Dawodu] when they had full knowledge that the allegations against [him] were false." The claim also alleges that Meneses, Quistorf, and IELLA "aided [Pisciuneri] in pursuing legal action even when they knew or should have known the allegations were false."

The sixth and final claim alleges that respondents "caused [Dawodu] a great deal of anxiety over losing income and a derogatory reputation from having a restraining order filed against him that the judge reprimanded [Pisciuneri] for even filing."

4

Meneses, Quistorf, and IELLA moved to strike the complaint as a SLAPP under section 425.16. The trial court granted the motion in full, struck the entire complaint, and entered judgment for Meneses, Quistorf, and IELLA. Dawodu moved for reconsideration, which the trial court denied. Dawodu timely appealed.

## III.

## DISCUSSION

Dawodu contends the trial court erroneously granted respondents' anti-SLAPP motion. We disagree.[3] The trial court properly granted the motion because Dawodu's claims arise from protected activity and are barred by the litigation privilege (Civ. Code, § 47, subd. (b).)

A. *Applicable Law and Standard of Review*

The anti-SLAPP statute applies to any cause of action against a defendant "arising from any act of that person in furtherance of the person's right of petition or free speech." (§ 425.16, subd. (b)(1).) The anti-SLAPP statute protects against the use of the judicial system to chill the constitutionally protected right to make statements or writings before judicial or other official proceedings, and in connection with an issue under consideration or review by a judicial body or other legally authorized official proceeding. (§ 425.16, subd. (e).)

---

[3] Respondents argue we should disregard Dawodu's opening brief and affirm the judgment because of the brief's deficiencies. Although the brief is lacking in some respects, we decline to disregard it and will address the case on the merits.

5

Anti-SLAPP motions are analyzed in two steps. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) At the first step, the court decides whether the action arises from "a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as defined in section 425.16, subdivision (e). (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) At the second step, we determine whether the plaintiff is likely to succeed on the merits. (*Ibid*.)

In assessing the first step, we determine whether a defendant's acts underlying the plaintiff's cause of action were in furtherance of the defendant's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) The focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319.) In determining whether a cause of action arises from protected activity, "'the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]'" (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284.)

For the anti-SLAPP statute to apply, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 78.) A claim therefore arises from protected activity only if "that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1062.)

6

"If conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the anti-SLAPP analysis has been carried, regardless of any alleged motivations that supply other elements of the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 892.)

If the defendant establishes that the challenged claim arises from protected activity, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) But if the defendant fails to succeed on the first step of the anti-SLAPP analysis, we need not address the merits. (*Ibid.*)

We review the trial court's ruling on an anti-SLAPP motion de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

B. *Dawodu's Claims Arise From Protected Activity*

As outlined above, all six of Dawodu's claims are premised on respondents' alleged involvement with Pisciuneri's filing a request for a restraining order against him and their communications related to those proceedings. The thrust of each claim is that respondents encouraged and assisted Pisciuneri with filing the request even though they knew the underlying allegations were false. Respondents' alleged conduct and communications associated with Pisciuneri's restraining order request constitute protected activity under the anti-SLAPP statute. (See *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479 ["prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16"]; *JSJ*

*Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521 ["Filing a lawsuit is an act in furtherance of the constitutional right of petition, regardless of whether it has merit."]; *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 928-930 [attorney communications preparing for and during litigation, including counseling or encouraging others to sue, are protected activity].) The trial court thus properly found that Dawodu's claims arise from protected activity.

C. *The Litigation Privilege Bars Dawodu's Claims*

Respondents argued, and the trial court agreed, that Dawodu's claims failed because they are barred by Civil Code section 47, subdivision (b)'s litigation privilege. We agree.

The litigation privilege codified in Civil Code section 47, subdivision (b) provides that a "'publication or broadcast'" made as part of a "'judicial proceeding'" is absolutely privileged. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) Its purpose is to provide "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.)

"[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.) "The privilege 'is not limited to statements made during a trial or other [judicial or quasi-judicial] proceedings,

8

but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Assn.*, *Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1241.)

The privilege's principal purpose is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 213.) The privilege also promotes the effectiveness of judicial proceedings and the administration of justice by encouraging "'open channels of communication and the presentation of evidence,'" and by enabling attorneys to "zealously protect their clients' interests" without the threat of subsequent derivative tort actions. (*Id.* at pp. 213-214.)

As explained, Dawodu's claims are all expressly based on respondents' involvement with Pisciuneri's filing a request for a restraining order against him. According to Dawodu, respondents encouraged and assisted Pisciuneri with filing the request even though they knew it was legally unfounded. Their conduct and communications associated with that proceeding, which form the basis for all of Dawodu's claims, fall within the litigation privilege's protections. (See *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1141-1142 [privilege covers defendant's malicious or fraudulent communications in prior probate proceeding in derivative civil action for damages]; *Holland v. Jones* (2012) 210 Cal.App.4th 378, 382 [litigation privilege bars defamation action based on statements in declaration submitted in lawsuit "whether true or false or made with malice or without" it]; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195 [statements made in good faith anticipation of litigation are protected].) As a result,

9

all of Dawodu's claims are barred by the litigation privilege.  (See *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1302 [litigation privilege is "absolute" and bars all claims except malicious prosecution when it applies].)  The trial court thus correctly found that Dawodu failed to show a probability of a succeeding on any of his claims and, in turn, correctly granted respondents' anti-SLAPP motion.

IV.

DISPOSITION

The judgment is affirmed.  Respondents may recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


McKINSTER

Acting P. J.


MILLER

J.