Filed 8/29/14  Meredith v. Plant CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROGER L. MEREDITH et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>MARDEN NOEL PLANT et al.,<br><br>     Defendants and Respondents. | A138925<br><br>(Marin County<br>Super. Ct. No. CIV1203827) |

Roger L. Meredith and Cheryll A. Barron (appellants) sued their former landlord Marden Noel Plant and affiliated parties (respondents), alleging multiple causes of action in connection with their residential lease.  Appellants appeal the trial court's order granting respondents' motion to strike three causes of action.  We affirm.

BACKGROUND

In June 2012, appellants entered into a residential lease with respondents.[1]  Under the terms of the lease, rent was due on the first of each month.  On three occasions between June 30 and July 15, appellants experienced problems with the property's sewage system which caused wastewater to back up into the bathtubs and toilets.  Appellants complained to respondents, who sent repair workers.

---

[1]    On the lease, only Plant is identified as the landlord.  The complaint alleges that Plant was an officer of respondent Plant & Associates, Inc., and that Plant and respondent Thomas L. Davis own the leased property through a self-settled trust.  For purposes of this appeal, the parties do not differentiate between the respondents' individual roles or liabilities; we shall do the same.

1

On July 16, Plant wrote appellants: "I will make financial accommodations with you for your loss of a living space. Give me some numbers of what will make you comfortable." When appellants did not respond, Plant wrote again on July 28, "Pl[ease] tell me what you have in mind for settling up with me on the inconveniences that the septic system has caused." On August 1, appellants wrote Plant demanding the following payments: (1) $4,500 for "physical and emotional stress"; (2) reimbursement for a restaurant meal eaten during one of the plumbing incidents and a locksmith charge for an unrelated problem; and (3) abatement of one-half of one month's rent. Appellants did not pay any part of the August rent due on August 1.

On or about August 10, respondents served appellants with a three-day notice to pay rent or quit and subsequently filed an unlawful detainer action. This action was dismissed, apparently because of defects in the form and service of the three-day notice. A second three-day notice and unlawful detainer action followed. On or about September 11, appellants vacated the property and respondents dismissed the second unlawful detainer action. Appellants did not pay any rent for August or September.

Appellants filed the instant lawsuit alleging thirteen claims. Respondents moved to strike three of these claims pursuant to Code of Civil Procedure section 425.16: retaliatory eviction, wrongful eviction, and eviction in violation of Civil Code section 1942.5, subdivision (a) (section 1942.5(a)).[2] The trial court granted the motion.

DISCUSSION

"The anti-SLAPP statute, [Code of Civil Procedure] section 425.16, allows a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected rights of free speech or petition for redress of grievances." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312 (*Flatley*).) The statute sets forth "a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation.] 'A defendant meets this burden by

---

[2] All undesignated section references are to the Civil Code.

2

demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in [Code of Civil Procedure] section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) To establish this probability of prevailing, " 'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Id.* at pp. 88-89.) We review de novo the trial court's order granting the anti-SLAPP motion. (*Flatley,* at p. 325.)

I. *Protected Activity*

The trial court found the conduct on which the challenged causes of action are based—the three-day notices and unlawful detainer actions—protected activity under the anti-SLAPP statute. Appellants do not dispute the three-day notices and unlawful detainer actions are the basis for the challenged causes of action. Appellants also concede that, if conducted in accordance with the law, such conduct is protected activity. Indeed, "[t]he prosecution of an unlawful detainer action indisputably is protected activity within the meaning of [Code of Civil Procedure] section 425.16." (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 (*Birkner*).) Moreover, where, as here, a prelitigation notice "is a legal prerequisite for bringing an unlawful detainer action, . . . service of such a notice does constitute activity in furtherance of the constitutionally protected right to petition" and is therefore also protected. (*Id.* at p. 282.)

Appellants contend the conduct in this case was nevertheless not protected because it was in violation of section 1942.5(a) and illegal activity is not protected activity for purposes of the anti-SLAPP statute. In *Flatley, supra,* 39 Cal.4th at p. 320, our Supreme Court held, if "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law," the activity is not protected. However, "the Supreme Court's use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute. . . . [A] reading of *Flatley* to push any statutory violation outside the reach of the anti-SLAPP

3

statute would greatly weaken the constitutional interests which the statute is designed to protect . . . . and we decline to give plaintiffs a tool for avoiding the application of the anti-SLAPP statute merely by showing any statutory violation." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.) Appellants do not contend the challenged conduct violated any criminal statutes.

Appellants also argue the litigation privilege does not apply to the three-day notices and subsequent unlawful detainer actions. We discuss the application of the litigation privilege to the challenged causes of action in more detail below, in connection with the second step of the SLAPP analysis. For purposes of analyzing whether conduct is protected activity under the anti-SLAPP statute, however, the relevance of the privilege is limited. Although at times courts have "looked to the litigation privilege as an aid" in determining whether conduct is protected under the anti-SLAPP statute (*Flatley, supra,* 39 Cal.4th at p. 323), "the two statutes are not substantively the same" and do not "serve the same purposes." (*Id.* at pp. 323-324.) Accordingly, the litigation privilege "does not operate as a limitation on the scope of the anti-SLAPP statute." (*Id.* at p. 325.) Respondents met their burden of demonstrating the challenged conduct was protected activity under section Code of Civil Procedure 425.16 and were not required to show the conduct was also protected by the litigation privilege. (See *Birkner, supra,* 156 Cal.App.4th at p. 284.)

II. *Probability of Prevailing*

The trial court found appellants failed to demonstrate a probability of success on the challenged causes of action because all are barred by the litigation privilege (§ 47, subd. (b)). Appellants rely in part on *Action Apartment Assn, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241–1242 (*Action Apartment*) to challenge this determination.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' " (*Action Apartment, supra,* 41 Cal.4th at. p. 1241.) " 'The

4

principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Ibid.*)

"The litigation privilege, however, is not without limit." (*Action Apartment, supra,* 41 Cal.4th at p. 1242.) As relevant here, the privilege will not apply to a claim brought under a state statute if it is "clear that the Legislature did not intend its enforcement to be barred by the litigation privilege." (*Id.* at p. 1245.) In *Action Apartment*, our Supreme Court found this intent clear when the state statute "is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Id.* at p. 1246.)

This exception to the litigation privilege has no bearing on appellants' common law claims for wrongful eviction and retaliatory eviction. (See discussion *post* at p. 7-8.) However, the exception arguably applies to appellants' section 1942.5(a) claim. (*Banuelos v. LA Investment, LLC* (2013) 219 Cal.App.4th 323.) Section 1942.5(a) provides, if a landlord retaliates against a tenant and the tenant is not in default as to rent, the landlord "may not" engage in specified conduct, including "recover[ing] possession of a dwelling in any action or proceeding," within 180 days of certain acts, including a tenant's "oral complaint to the lessor regarding tenantability."[3] A landlord retains the

---

[3] In its entirety, section 1942.5(a) provides: "If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following: [¶] (1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability. [¶] (2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability. [¶] (3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice. [¶] (4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the

5

right to engage in the specified conduct "for any lawful cause." (§ 1942.5, subd. (d).) To recover possession for a good faith, nonretaliatory reason, the landlord must give the tenant notice of such grounds; and if controverted, the landlord must prove the truth of the reason stated. (§ 1942.5, subd. (e).) While section 1942.5(a) can be used as an affirmative defense in an unlawful detainer action (see *Drouet v. Superior Court* (2003) 31 Cal.4th 583, 587), the Legislature also provided that the provision may be the basis for a damages action against a violating landlord (§ 1942.5, subd. (f) [landlord "who violates this section shall be liable to the lessee in a civil action for" actual and punitive damages]).

We need not decide if the *Action Apartment* analysis applies when a tenant sues a landlord under section 1942.5. Even if we adopted appellants' interpretation of the scope of the litigation privilege, they still would fail to establish a probability of prevailing on that claim.

The conduct identified in section 1942.5(a) is prohibited only if the tenant "is not in default as to the payment of his rent." It is undisputed that appellants did not pay rent for the month of August. This failure to pay rent occurred before the first three-day notice was served.

Appellants first contend respondents induced them to default on their rent payments by asking appellants what financial compensation they sought for the sewage problems. Assuming such an inducement could excuse default for purposes of section 1942.5(a), the facts do not show it here. Appellants submitted no evidence that respondents stated or even suggested appellants could withhold rent to compensate for the sewage problems; respondents simply sought to open negotiations on the amount of financial compensation. Moreover, had appellants understood respondents' inquiry as an

---

issue of tenantability. [¶] (5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor. [¶] In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive."

invitation to withhold rent, service of the three-day notice alerted appellants of their mistake, yet they still did not pay the rent due.

Appellants next argue the sewage problems constituted a breach of respondents' warranty of habitability, thereby voiding appellants' obligation to pay rent. We assume without deciding such a scenario could, as a legal matter, excuse their default; we also assume appellants' evidence shows respondents' breach. Nonetheless, under the authority cited by appellants, their default was only partially excused. When a landlord breaches the warranty of habitability, " 'the tenant is not absolved from all liability for rent, but remains liable for the reasonable rental value of the premises.' " (*Green v. Superior Court* (1974) 10 Cal.3d 616, 629.) According to appellants' August 1 email to respondents, any breach by respondents only relieved appellants of the obligation to pay one-half of one month's rent. On appeal, appellants do not contend the breach rendered the reasonable rental value of the property zero, nor do the facts support such a finding. Accordingly, after August 1, appellants were in default as to at least a partial payment of rent.[4]

Finally, appellants suggest section 1942.5(a) only required them to be current in rent at the time of their tenantability complaint. This interpretation is not supported by the statutory language. The statute provides *if* a landlord retaliates against a tenant and the tenant is not in default as to rent, *then* the landlord may not take certain actions within 180 days of specified conduct by the tenant. (See fn. 3, *ante*.) The language makes clear that the critical period for the tenant's rent default is when the landlord takes the prohibited actions, not when the tenant makes the complaint.

The exception to the litigation privilege in *Action Apartment* does not apply to appellants' common law claims for wrongful eviction and retaliatory eviction. We agree

---

[4]    Although appellants also sought reimbursement for their out of pocket expenses of the restaurant dinner and locksmith charge, these expenses amounted to substantially less than one-half of one month's rent. Appellants do not contend they were lawfully entitled to deduct from their rent payments the additional $4,500 they sought for emotional and physical stress.

with the trial court the litigation privilege applies and bars these claims. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1213 [litigation privilege bars common law wrongful eviction claim based on three-day notice and unlawful detainer action].)[5]

Appellants first contend the litigation privilege does not apply because these common law claims are akin to a malicious prosecution claim. It is well settled that the litigation privilege does not apply to malicious prosecution claims. (*Action Apartment, supra,* 41 Cal.4th at p. 1242.) However, our Supreme Court has rejected the argument that the litigation privilege does not apply to a cause of action that is similar to malicious prosecution when that cause of action does not require all of the same conditions: favorable termination, lack of probable cause, and malice. (*Id.* at p. 1249.) Neither common law retaliatory eviction nor wrongful eviction requires favorable termination of a prior proceeding. (*Glaser v. Meyers* (1982) 137 Cal.App.3d 770, 773-774 [affirming judgment for common law retaliatory eviction where no unlawful detainer action filed]; *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039 [elements of common law wrongful eviction are plaintiff's possession of premises and defendant's forcible entry].) Accordingly, any similarity to claims for malicious prosecution does not render the litigation privilege inapplicable.

Appellants note the litigation privilege does not bar the use of privileged statements or acts as evidence. This proposition is not relevant here. While privileged statements can be used as evidence of, for example, a party's intent (*Flatley, supra,* 39 Cal.4th at p. 325), appellants do not seek to use the three-day notices and unlawful detainer actions in this manner but rather seek to hold respondents liable based on these protected acts.

---

[5] For the first time at oral argument, appellants argued their common law claims are not barred by the litigation privilege because they are based on conduct other than the three-day notices and unlawful detainer actions. As appellants failed to raise this argument in their briefs, they have forfeited it. (*Lyons v. Chinese Hosp. Assn* (2006) 136 Cal.App.4th 1331, 1336, fn. 2.)

Appellants next contend the three-day notices are not protected by the litigation privilege because a prelitigation communication is only privileged when it relates to litigation that is contemplated in good faith. " '[T]he good faith, serious consideration of litigation test is not . . . a test for malice and it is not a variation of the "interest of justice" test.' [Citation.] Rather, it is 'addressed to the requirement the statements "have some connection or logical relation to the action.["] [Citations.]' [Citation.] Thus, if the statement is made with a good faith belief in a legally viable claim and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. [Citation.]" (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 919.) Appellants argue the unlawful detainer action was not contemplated in good faith because of the habitability issues and respondents' "inducement" of appellants to default on their rent by opening discussions about financial compensation. We have rejected appellants' argument that these excused appellants' obligation to pay any rent; they similarly fail to remove the three-day notices from the protection of the litigation privilege.

Appellants argue their claim for wrongful eviction can proceed despite the litigation privilege on a theory of constructive eviction. We disagree. Appellants' complaint sets forth a separate claim for constructive wrongful eviction that is not challenged by respondents' anti-SLAPP motion. If appellants' wrongful eviction claim stated a claim for constructive wrongful eviction, it would be subject to dismissal as duplicative of the constructive wrongful eviction claim. (*Award Metals, Inc. v. Superior Court* (1991) 228 Cal.App.3d 1128, 1135.) Moreover, as noted above, for purposes of the first step of the anti-SLAPP analysis, appellants do not dispute that the challenged claims, including the claim for wrongful eviction, are based on the three-day notice and unlawful detainer actions. This is confirmed by the allegations of this cause of action, which specifically rely on the three-day notices.

Finally, appellants contend, with respect to all three challenged causes of action, striking them is contrary to public policy because appellants filed their lawsuit in good faith and did not intend to chill protected speech. To prevail on their anti-SLAPP motion,

9

respondents need not prove appellants intended to chill protected speech. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Our Supreme Court has held our construction of the statute does not violate public policy, in part because only claims with no probability of prevailing are stricken. (*Id.* at p. 65.)

DISPOSITION

The order is affirmed. Costs on appeal are awarded to respondents.


_____
SIMONS, J.


We concur.




_____
JONES, P.J.




_____
NEEDHAM, J.