Filed 9/19/24  Jones v. City and County of San Francisco CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| DOUGLAS S. JONES, JR.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent. | A166189<br><br>(San Francisco City & County Super. Ct. No. CGC-22-599208) |

Plaintiff Douglas S. Jones, Jr., appeals from a judgment dismissing his complaint after the trial court sustained defendant City and County of San Francisco's (City) demurrer without leave to amend, concluding Jones's lawsuit was barred by the litigation privilege of Civil Code section 47, subdivision (b).  Jones argues the trial court erred in concluding the litigation privilege bars his claims.  We agree and reverse.

## I.  BACKGROUND[1]

In 2015, Jones was terminated from his position as a deputy sheriff in the San Francisco Sheriff's Department.  The termination notice advised

---

[1] We take facts from the complaint and matters subject to judicial notice.  (See *Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279.)  In support of its demurrer, the City requested judicial notice of numerous documents, including two prior complaints Jones

Jones that he had the right to appeal the decision pursuant to the San Francisco Civil Service Commission rule 122 procedures. Jones appealed and requested arbitration. In 2017, the arbitrator found in Jones's favor. The arbitrator's award reduced the penalty to a written reprimand and directed Jones to be reinstated, with back pay and benefits. The City's counsel then advised Jones he would be reinstated. Subsequently, however, the then-sheriff informed Jones she was rejecting the arbitrator's award based on a provision of the collective bargaining agreement (CBA) between the City and the San Francisco Deputy Sheriffs' Association (SFDSA) providing that an appeals decision which recommended a reduction in discipline was not binding on the Sheriff's Department.

## A. First Lawsuit

In December 2017, SFDSA and Jones filed a complaint against the City seeking, among other things, to enforce the arbitration award (first lawsuit). In March 2019, the trial court confirmed the arbitration award and ordered the City to comply with it, and Division Three of this court affirmed that decision in September 2020. (*San Francisco Deputy Sheriffs' Association v. City and County of San Francisco* (Sept. 17, 2020, A157120) [nonpub. opn.].)

One year later—in September 2021—Jones and SFDSA moved to enforce the judgment. While Jones had been reinstated in November 2020, he asserted the City had not paid him back pay or his appellate costs. The outcome of that motion is unclear from the facts before us, but Jones and SFDSA dismissed the first lawsuit in May 2022.

---

filed against the City and pleadings and orders filed in those lawsuits. Jones did not oppose the request. Although the trial court did not explicitly rule upon it, we presume the request was granted. (See *Boshernitsan v. Bach* (2021) 61 Cal.App.5th 883, 888, fn. 4.)

2

## B. Second Lawsuit

In December 2019—while the first lawsuit appeal was pending—Jones filed a complaint against the City (second lawsuit). After motion practice, in December 2021, Jones filed a third amended complaint alleging two causes of action for discrimination and retaliation in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). He alleged the sheriff's "decision to ignore the arbitrator's decision and award" and "subsequent refusal to reinstate" him were based on his gender, age, and/or race. In March 2022, the trial court sustained a demurrer to the third amended complaint without leave to amend, concluding Jones's claims were barred by the litigation privilege. The court stated that the gravamen of Jones's claims was that the sheriff's letter refusing to accept the arbitrator's decision constituted retaliation and discrimination, which was a communicative act meeting the elements of the litigation privilege. The court entered judgment dismissing the second lawsuit.

## C. The Instant Lawsuit

In April 2022—less than three weeks after judgment was entered in the second lawsuit—Jones filed the instant lawsuit. The complaint asserted three causes of action under FEHA for discrimination, retaliation, and failure to prevent discrimination and retaliation. Jones—an African American male over the age of 40—alleged the City's actions constituted unlawful employment practices in violation of FEHA. Preceding his reinstatement, Jones alleged the City's decision to ignore the arbitrator's award and subsequent refusal to reinstate him was based on his gender, age, and/or race. While the City had reinstated Jones in November 2020, he alleged he had "not received the full benefit of his reinstatement," including payment of owed wages, restoration of his seniority, and reinstatement to his former

3

specialty assignment.  As to owed wages, Jones alleged the City failed to pay his back pay as directed by the arbitrator's award; he complained to the City about the lack of compliance with the arbitrator's award; and the City failed to pay him because of his race, gender and age, and because he contested his termination through the arbitration process.

As to seniority, Jones alleged he was employed by the City for 15 years and was entitled to premium treatment in which duty and specialty unit assignments, and work and vacation schedules, take into account an employee's seniority; the City failed or refused to restore or recognize his seniority; upon reinstatement, the City assigned him to the records division—an assignment in line with his experience and seniority—but thereafter assigned him " 'temporarily' " to the jail; he was assigned to intake, the most dangerous part of the jail where he was subjected to increased inmate contact and violence; he complained to the City about its failure or refusal to restore or recognize his seniority and the arbitrary work assignments upon his reinstatement; the City failed or refused to restore or recognize his seniority because of his race, gender and age, and because he contested his termination through the arbitration process; and the City assigned him to the most dangerous position in the jail because of his race, gender and age, and because he contested his termination through the arbitration process.

As to his specialty assignment, Jones alleged that prior to being terminated he had been assigned to the emergency services unit (ESU), which involved additional pay, overtime hours, and specialized training; the arbitrator's award directed him to be reinstated to his former position, which included his assignment to ESU; upon reinstatement, he was not assigned to ESU and, therefore, was deprived of additional pay, overtime hours, and specialized training; he complained to the City about its refusal to reinstate

4

him to ESU; and the City instead assigned him to the most dangerous position within the jail because of his race, gender and age, and because he contested his termination through the arbitration process.

In his discrimination cause of action, Jones incorporated the above allegations and alleged, among other things, that the City had failed or refused to pay his owed wages, restore his seniority, and reinstate him to his ESU assignment because of his race, age, and/or gender. In his retaliation cause of action, Jones incorporated the above allegations and alleged he engaged in protected activities, including challenging his termination by engaging in the arbitration process and complaining that the City failed or refused to pay his owed wages, to restore his seniority, and to reinstate him to his ESU assignment. He alleged the City retaliated against him by refusing to pay his owed wages, restore his seniority, and reinstate him to his ESU assignment, and by moving him to the jail instead of his duty assignment in the records division. He alleged similarly situated, non-protected employees did not receive such treatment. His failure to prevent discrimination and retaliation cause of action alleged the City failed to take reasonable steps to prevent the discrimination and retaliation asserted in the other causes of action.

The City demurred, arguing Jones's complaint failed to state a claim because each cause of action was barred by the litigation privilege. The City claimed Jones's complaint asserted only one act of alleged FEHA violations—the City's failure to comply with the trial court's order in the first lawsuit. This, it argued, was not separately actionable in a new lawsuit. According to the City, Jones could not treat a litigation dispute over compliance with a court order as an independent employment decision actionable under FEHA.

5

In opposition, Jones argued the City misconstrued the gravamen of the instant lawsuit. He asserted his complaint was based on " 'new' " acts of discrimination and retaliation which took place after his reinstatement. He alleged the reason the City failed or refused to perform was based on his gender, age, race, and because he complained about the City's noncompliance with the arbitrator's award. These actions, he asserted, constituted a course of conduct for which the litigation privilege did not apply. Additionally, he argued the litigation privilege applies only to common law tort claims and must yield to his statutory FEHA claims.

The trial court sustained the City's demurrer without leave to amend. The court explained that in the second lawsuit it had sustained the City's demurrer based on the litigation privilege, and it incorporated its prior order by reference. The court stated that Jones's complaint here "largely copie[d]" the complaint in the second lawsuit and continued to allege disputes arising from his reinstatement proceedings. Because Jones had failed to acknowledge the court's ruling in the second lawsuit, "much less to draw any distinction regarding the litigation privilege between" the two cases, the court concluded Jones had conceded amendment would be fruitless. The court subsequently issued a judgment dismissing the lawsuit.

## II. DISCUSSION

Jones argues the litigation privilege does not bar the claims in his complaint. The City argues the trial court correctly dismissed Jones's lawsuit based on the litigation privilege and, for the first time on appeal, it contends the doctrines of claim preclusion and issue preclusion support the judgment. Jones did not file a reply brief.

6

### A. Legal Principles and Standard of Review

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*).) "Courts give the litigation privilege a 'broad interpretation' in order to further its principle purpose of protecting ' "access to the courts without fear of . . . derivative tort actions." ' " (*People v. Potter Handy, LLP* (2023) 97 Cal.App.5th 938, 947.) The interpretation of the litigation privilege is a pure question of law which we review independently. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1273.)

A " 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Rusheen, supra*, 37 Cal.4th at p. 1058.) Our Supreme Court has "drawn 'a careful distinction between a cause of action based squarely on a privileged

communication . . . and one based upon an underlying course of conduct evidenced by the communication.' " (*Action Apartment*, *supra*, 41 Cal.4th at p. 1248.) " 'As a general rule, the privilege " 'applies only to communicative acts and does not privilege tortious courses of conduct.' " ' " (*Id.* at p. 1249.) If "the gravamen of the complaint is a privileged communication," then "the privilege extends to necessarily related noncommunicative acts." (*Rusheen*, at p. 1062.) In short, "unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Id.* at p. 1065.)

We review the trial court's order sustaining a demurrer de novo and determine whether the complaint states a cause of action on any available legal theory. (*Brown v. Deutsche Bank National Trust Co.*, *supra*, 247 Cal.App.4th at p. 279.) We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (*Ibid.*) We liberally construe the complaint and draw all reasonable inferences in favor of the asserted claims. (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919.)

## B. Litigation Privilege

Jones contends the gravamen of his complaint demonstrates that the litigation privilege does not bar his lawsuit. We agree.

Based on our independent review of the complaint, the gravamen of Jones's lawsuit is claims of discrimination and retaliation based on the City's alleged adverse employment actions, the bulk of which occurred after the City reinstated his employment.[2] Jones alleges the City committed the following

---

[2] To establish prima facie cases of discrimination and retaliation under FEHA, a plaintiff must show, among other things, that their employer subjected them to an adverse employment action. (*Khoiny v. Dignity Health* (2022) 76 Cal.App.5th 390, 397.)

8

adverse employment actions after arbitration: rejected the arbitrator's decision and refused to reinstate him. He alleges the City committed the following adverse employment actions after it reinstated him to the position of deputy sheriff: failed or refused to pay his back pay; failed or refused to reinstate and recognize his seniority; assigned him to the most dangerous part of the jail; and failed or refused to reinstate him to his former specialty assignment with ESU. Jones alleges the City's actions were based on his race, gender, and age, and because he contested his termination. These alleged adverse employment actions constitute noncommunicative conduct.

The litigation privilege extends to noncommunicative acts which are necessarily related to communicative conduct which forms the gravamen of the complaint. (*Rusheen*, *supra*, 37 Cal.4th at p. 1065.) But here, communicative conduct does not form the gravamen of Jones's complaint. While the City does not clearly identify communicative act(s) from which it claims the litigation privilege extends, it mentions the arbitration award, the first lawsuit seeking to enforce the award, and the confirming judgment. The City asserts that Jones seeks "to impose liability based on the City's litigation positions and implementation of the order confirming the arbitration award" in the first lawsuit, acts which it claims are protected by the litigation privilege. But the complaint allegations are not based on positions the City took, statements it made, or pleadings it filed during the arbitration proceeding or the first lawsuit. (See, e.g., *Action Apartment*, *supra*, 41 Cal.4th at p. 1249 [filing of a legal action is a communicative act]; *California Physicians' Service v. Superior Court* (1992) 9 Cal.App.4th 1321, 1330 [defensive pleading fell within litigation privilege]; *People v. Potter Handy*, *LLP*, *supra*, 97 Cal.App.5th at p. 948 [pleadings and process in a case are privileged communications].)

9

The first lawsuit sought to enforce the arbitration award, i.e., reinstatement with back pay and benefits. As alleged in the complaint, the termination notice advised Jones that any appeal was subject to the Civil Service Commission rule 122 procedures. After arbitration, the sheriff informed Jones she was rejecting the arbitrator's decision based on a provision of the CBA providing that an appeals decision which, as here, recommended a reduction in discipline was not binding on the Sheriff's Department. As explained by Division Three in the first lawsuit, the CBA required that appeals of disciplinary grievances be submitted to the Administrative Appeals Board and could not be submitted to arbitration. However, Jones's appeal had proceeded under rule 122 of the Civil Service Commission, as provided in the written termination notice. The City argued the agreement to arbitrate Jones's appeal was void and unenforceable, Jones was not entitled to relief on the theory of equitable estoppel, and the CBA's appeal procedures afforded Jones due process. (*San Francisco Deputy Sheriffs' Association v. City and County of San Francisco*, *supra*, A157120.) In the first lawsuit, the City's position was, in essence, defense of the sheriff's authority and decision to reject the arbitrator's award. In the instant complaint, with the exception of brief allegations stating that the City's decision to reject the arbitrator's award was based on Jones's gender, age, and/or race, the claims are not based on the City's litigation positions in the first lawsuit. For example, Jones is not suing the City because it argued the arbitration agreement was unenforceable or that it was not estopped from asserting Jones should be held to the terms of the CBA.

Further, even if we assume for purposes of this appeal that any of the noncommunicative adverse employment actions may be necessarily related to communicative conduct—such as the sheriff's written notice rejecting the

10

arbitrator's award—we cannot conclude that Jones's causes of action in their entirety are so related as to be barred by the litigation privilege.[3]  For example, Jones alleges that after his reinstatement he was assigned to the records division, commensurate with his seniority, but then he was assigned to the most dangerous part of the jail—intake—where he was subject to increased inmate contact and violence.  He alleges that the City assigned him to this position because, among other reasons, he is an African American male over the age of 40.  He complained to the City about his arbitrary work assignments.  Additionally, he alleges he was assigned to the jail in retaliation for, in part, his complaints about the City's unlawful activities and discriminatory conduct.  These actions by the City are unrelated to any communicative act to which the privilege purportedly extends and could exist even if Jones had not been terminated and proceeded through arbitration and the first lawsuit.  The City contends Jones cannot use a different label for pleading an identical grievance which was litigated in the first lawsuit.  (See *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1276 ["plaintiff could not use a different label for pleading what was in substance an identical grievance arising from identical conduct as that protected by the privilege"].)  But we disagree with the City's characterization of Jones's lawsuit.

The City relies on *Rusheen, supra,* 37 Cal.4th 1048.  There, our Supreme Court held that the trial court properly struck a cross-complaint for abuse of process arising from the plaintiff attorney's execution of a default judgment procured through the filing of allegedly false declarations of

---

[3] A "general demurrer does not lie as to a portion of a cause of action, and if any part of a cause of action is properly pleaded, the demurrer will be overruled." (*Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 452.)

11

service.  (*Id.* at p. 1065.)  As the court explained, "if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, which in this case included acts necessary to enforce the judgment and carry out the directive of the writ."  (*Ibid.*)  Because the gravamen of the action was the procurement of the judgment based on allegedly false declarations of service—privileged communications—"the enforcement of the judgment in reliance on the filing of privileged declarations of service was itself privileged."  (*Ibid.*)

While *Rusheen* is instructive, it is distinguishable.  There, the gravamen of the action was based on the communicative act of filing allegedly false declarations, not the noncommunicative act of levying on property in execution of the judgment.  (*Rusheen, supra*, 37 Cal.4th at p. 1065.)  The only alleged wrongful conduct by the plaintiff attorney was the filing of the declarations.  (*Id.* at p. 1062.)  The act of levying was merely a necessarily related noncommunicative act.  (*Ibid.*)  Here, the gravamen of Jones's lawsuit is not based on a communicative act, such as procuring a judgment relying on privileged communications.  It is based on alleged wrongful conduct which the City committed, at least in part, following Jones's reinstatement.

The City argues "the only harms Jones alleges flow from the supposed failure of the City to comply with the order in" the first lawsuit.  It asserts "the gravamen of the Complaint is not independent of the arbitration award, ensuing litigation, and confirming judgment."  Rather, the complaint "focuses on the same transactions that the parties contested in" the first lawsuit.  For the reasons discussed above, we disagree.  (See *Rusheen, supra*, 37 Cal.4th at p. 1065 [litigation privilege does not apply where "an independent, noncommunicative, wrongful act [is] the gravamen of the action"].)  We are

12

also unpersuaded by the City's contention that allowing Jones's lawsuit to proceed "would violate core principles of finality of judgments that animate the litigation privilege." Unlike in *Rusheen*, where the "abuse of process claim—a derivative tort for litigation-related misconduct—would be another round of litigation to decide the same issue that had already been decided" (*Rusheen*, at p. 1064), that is not the case here. Overall, while the complaint contains some allegations related to facts which led to the first lawsuit, it asserts claims that arise at least in part out of conduct independent of that suit.

Jones's complaint is not barred by the litigation privilege. Based on this conclusion we need not, and do not, address Jones's argument that the litigation privilege must yield to his statutory FEHA claims.

In overruling the trial court's sustaining of the general demurrer, we hold simply that the complaint is not barred in its entirety by the litigation privilege. A "general demurrer does not lie as to a portion of a cause of action." (*Fire Ins. Exchange v. Superior Court*, *supra*, 116 Cal.App.4th at p. 452.) While allegations based on the City's rejection of the arbitrator's decision, its refusal to reinstate Jones and award his back pay appear to be barred by the litigation privilege, some of Jones's allegations challenge acts of discrimination and retaliation following his reinstatement, and do not appear protected by the litigation privilege. Allegations based on actions taken by the City following Jones's reinstatement, such as the failure to restore or recognize his seniority by transferring him to the jail, appear to be actionable.

## C. Claim and Issue Preclusion

Independent from the above issue, the City argues we should affirm the trial court's judgment dismissing the complaint pursuant to the doctrines of

claim preclusion and issue preclusion. The City contends that the judgment in the second lawsuit establishes claim preclusion as to Jones's claims and issue preclusion as to his arguments challenging the applicability of the litigation privilege. The City acknowledges it did not raise preclusion in the trial court, asserting that the judgment in the second lawsuit became final after the meet and confer deadline for the demurrer in the instant lawsuit. Still, the City asks us to address the preclusion issues for the first time on appeal in the interest of judicial economy. Jones did not anticipate this argument in his opening brief and did not file a reply brief. We decline to consider these issues in the first instance.[4]

## III. DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to vacate its August 4, 2022 order sustaining without leave to amend the City's demurrer to the complaint and to enter a new order overruling the demurrer. Jones is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

[4] The City requests judicial notice of two documents filed in the second lawsuit—Jones's opposition to the City's demurrer to the third amended complaint and the notice of entry of judgment—which it contends are relevant to the preclusion issues. Because we are not considering the City's claim preclusion and issue preclusion arguments, the documents are irrelevant. Therefore, we deny the City's request.

14

LANGHORNE WILSON, J.

WE CONCUR:


BANKE, ACTING P. J.


SIGGINS, J.*


A166189
*Jones v. City and County of San Francisco*

---

    * Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.