Filed 8/29/25  Rand-Lewis v. Crestwood Hills Assn. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TIMOTHY D. RAND-LEWIS, | B334969 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STLC05300) |
| v. | |
| CRESTWOOD HILLS ASSOCIATION, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph M. Lipner, Judge.  Reversed.

Johnson & Johnson, Neville L. Johnson and Melissa N. Eubanks for Defendant and Appellant.

Gary Rand, A Professional Law Corporation, Gary Rand and Suzanne E. Rand-Lewis for Plaintiff and Respondent.

_____

Timothy Rand-Lewis sued Crestwood Hills Association (Crestwood) alleging causes of action arising from statements made in a letter written by an attorney on Crestwood's behalf. Crestwood filed an anti-SLAPP motion to strike the complaint under Code of Civil Procedure section 425.16. The trial court denied the motion on the ground that Crestwood failed to show that the challenged statements constitute protected speech under the anti-SLAPP statute. Crestwood appealed. On appeal, Crestwood argues for the first time that the letter constitutes prelitigation communication protected by the anti-SLAPP statute. We exercise our discretion to consider the issue, and, on that basis, we reverse.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

Crestwood is a homeowners' association in the Crestwood Hills neighborhood of Los Angeles. Crestwood owns three vacant parcels in that neighborhood. In October 2021, Crestwood's members approved of a plan to sell the parcels. One parcel, referred to as "Lot 1," is adjacent to property owned by Rand-Lewis.

At Crestwood meetings held in March and May 2022, the Crestwood's board of directors (the board) updated Crestwood members on the progress of efforts to market the lots. Rand-Lewis was present at the meetings.

On July 29, 2022, a group of potential buyers inspected Lot 1. That afternoon, Rand-Lewis emailed Kate Blackman, the president of the board, stating in part that "[s]everal people were trespassing on our property adjacent to the HOA lots today. . . . Permitting random people to walk all over the property and trespass onto our property is unacceptable."

That evening, one of the prospective buyers of Lot 1 left a voicemail recording with Crestwood's real estate agent, which the trial court described as follows: "The buyer stated that they felt deterred from buying Lot 1 because [Rand-Lewis] had yelled at them and said he would call the police and that the buyers were not allowed to look at the property."[1] The real estate agent forwarded the voicemail to Blackman and another board member.

During a subsequent telephone call with the real estate agent, the potential buyers told the agent that "Rand-Lewis rushed towards them and their 9-month-old infant while shouting profanities, accusing them of trespass, and threatening to call the police." The potential buyers expressed that Rand-Lewis's behavior "shocked and frightened" them. The agent informed the board of this conversation.

On August 9, 2022, attorney "Glen L. Kulik . . . sent a letter on behalf of Crestwood to Rand-Lewis via email to both Rand-Lewis's personal email address . . . and his professional email address affiliated with his law firm" (the August 9 letter). Kulik copied the board. The letter states: "[Crestwood's] members have been made aware that [Crestwood] is attempting to sell one of the lots that it owns near your home. The sale is being undertaken in order for [Crestwood] to meet its fiduciary duty to act in a prudent manner in managing [Crestwood's] assets. While [Crestwood] does not require membership approval to sell

_____

[1] A digital recording of the voicemail was apparently lodged with the trial court in support of Crestwood's anti-SLAPP motion. Neither the digital record nor a transcription of the recording is included in our record. Our quotation regarding the recording is the trial court's description of the voicemail in its ruling on the anti-SLAPP motion.

property it owns, in an effort to be inclusive, the members voted to support such a sale at the last annual meeting. Members were updated on the progress of the marketing efforts at board meetings in March 2022 and May 2022. . . . [¶] . . . [Crestwood] received unsolicited offers from two separate buyers to purchase Lot 1. [Crestwood] has been in negotiations with these buyers. Recently, one group of buyers visited Lot 1 with their financing partner to inspect the protected trees on the lot so our negotiations could continue. Immediately following their visit to the property, they informed [Crestwood] that you confronted them in such an aggressive manner that they were stunned and alarmed. They reported that they felt almost as if they were being assaulted by you. As a result, it appears unlikely they will go ahead with further negotiations. [Crestwood] works on behalf of all of its members and the importance of the potential sale of a property to [Crestwood] cannot be underestimated. We trust it was not your intent to undermine [Crestwood's] efforts to sell a lot and to prevent any possible sale of that property. [¶] No one wants to be in an adversarial relationship with you. However, I am informed that your bullying, threatening and harassing people in the community happens all too often. We ask you to act in a civilized manner towards anyone who visits Lots 1, 2 or 3 to decide if they would like to buy the lot. We ask that you not scream, yell, bully, accost, or hurl profanities at potential buyers. Should you persist with such conduct towards potential buyers, [Crestwood] will have no choice but to take appropriate action. We sincerely hope that will be unnecessary. [¶] In conclusion, please treat potential buyers, visitors and other Crestwood Hills residents

with appropriate civility in the future. Thank you for your cooperation." (Capitalization omitted.)

On August 10, 2022, Rand-Lewis filed a verified complaint in the superior court against Crestwood asserting five ostensible causes of action: (1) defamation; (2) negligence; (3) violation of Business & Professions Code section 17200; (4) violation of the Unruh Civil Rights Act (Civ. Code, § 51); and (5) injunctive relief.

According to the complaint, Crestwood emailed the August 9 letter to his personal email and "a third party law firm business address." The letter was not "marked as private, thereby publishing it to all individuals who had access to the third party's business email." The letter "falsely stated that [Rand-Lewis] had repeatedly engaged in 'bullying, threatening and harassing people in the community' which 'happens all too often'; that he had engaged in 'scream(ing), yell(ing), bully(ing), accost(ing), . . . [and] hurl(ing) profanities at potential buyers' of the adjacent association lots, and that he had not 'treat(ed) potential buyers, visitors and other Crestwood Hills residents with appropriate civility.' " The letter also "falsely accused [Rand-Lewis] of criminal misconduct, and falsely stated that [Rand-Lewis] had 'aggressively' 'confronted' the trespassers, that he had 'assaulted' them, as follows: 'you confronted them in such an aggressive manner that they were stunned and alarmed. They reported that they felt almost as if they were being assaulted by you. As a result, it appears unlikely they will go ahead with further negotiations.' "

On September 8, 2022, Crestwood filed an anti-SLAPP motion on the ground that Rand-Lewis's allegations arise "from Crestwood's exercise of its right of free speech about matters of public interest," and Rand-Lewis cannot establish a probability

of prevailing on his claims. In support of his opposition to the motion, Rand-Lewis offered declarations purporting to establish additional publications of the letter that were not alleged in the complaint.

The court heard argument on the motion on December 21, 2023, and issued its ruling denying the motion on December 28, 2023. The court explained Crestwood had failed to show the letter involved a matter of public interest, and thus that the court could deny the motion without addressing the probability that Rand-Lewis would prevail on the merits of his complaint. The court nevertheless went on to address the merits of the Rand-Lewis's defamation claim, and concluded that he "has no chance of success on the merits" because Rand-Lewis has not established a substantial likelihood that he could prove the publication and substantial untruth elements thereof.

The court noted it was not addressing whether the letter constitutes a prelitigation communication protected under the anti-SLAPP statute or whether the litigation privilege bars Rand-Lewis's claims, because Rand-Lewis had not raised the former argument and had not timely raised the latter argument,[2] thereby forfeiting them.

---

[2] Below, Crestwood had only raised the litigation privilege issue in its reply, not in its original moving papers. Specifically, Crestwood argued that Rand-Lewis could not show a substantial likelihood of success on the merits in connection with prong two of the anti-SLAPP analysis because of the litigation privilege. Crestwood did not raise the litigation privilege in connection with prong one, nor did Crestwood raise the prelitigation communication issue at any time below.

## DISCUSSION

The anti-SLAPP statute permits a court to strike any cause of action "arising from any act . . . in furtherance of the . . . right of petition or free speech" unless the court finds a "probability" that the plaintiff will prevail on the claim involved. (Code Civ. Proc., § 425.16, subd. (b)(1).)

The trial court analyzes an anti-SLAPP motion in two steps. The first is to determine whether the defendant established "that the challenged claim arises from activity protected by [Code of Civil Procedure] section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

Crestwood argues the court erred in denying its anti-SLAPP motion.

### A. Rand-Lewis's Causes of Action Arise from a Protected Prelitigation Communication.

Code of Civil Procedure section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Prelitigation "[c]ommunications may be protected under that subdivision if they concern the subject of a present dispute and litigation is ' " 'contemplated in good faith and under serious consideration.' " ' (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 (*Neville*); see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [(*Briggs*)].)" (*WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 660 (*WasteXperts*).)

7

### 1. *Forfeiture of the Protected Prelitigation Communication Contention*

Crestwood did not argue below that the August 9 letter constitutes protected "prelitigation correspondence" under the anti-SLAPP statute. (*WasteXperts, supra*, 103 Cal.App.5th at p. 660.) We nonetheless requested supplemental briefing on the issue. We believe it is in the interest of justice to consider the argument because both parties have now had a full opportunity to speak to the merits of whether the letter constitutes a prelitigation communication and thus protected activity under the anti-SLAPP statute.

Rand-Lewis disagrees. He argues that considering the argument now would "extreme[ly] prejudice" him because he never had the opportunity to discover and present evidence on whether the letter reflects "good faith" and "serious consideration" of litigation—a "factual" issue. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 (*Action Apartment Assn.*).) Rand-Lewis also requests the opportunity to offer evidence on appeal, should we reach the prelitigation communication issue. Because Rand-Lewis does not identify what evidence he would offer, we must assume the evidence he would have sought and/or would offer on appeal relates to the arguments in his supplemental brief as to why the August 9 letter does not constitute a prelitigation communication. There can be no prejudice from his inability to discover and present such evidence, however, because those arguments are legally irrelevant for the reasons we discuss below.

We therefore exercise our discretion to consider the issue of whether the August 9 letter constitutes a protected prelitigation

communication, and whether Rand-Lewis's claims arise from that protected activity.

## 2. *Protected Prelitigation Communication*

Crestwood "need not separately demonstrate that the [August 9 letter] concerned an issue of public significance" in order to establish it constitutes a prelitigation communication. (*Briggs, supra*, 19 Cal.4th at p. 1123, italics omitted.) Rather, as noted above, Crestwood must prove only: (1) the letter "concern[s] the subject of a present dispute" and (2) at the time Crestwood wrote the letter, litigation was " ' " 'contemplated in good faith and under serious consideration.' " ' " (*WasteXperts, supra,* 103 Cal.App.5th at p. 660.)

As to the first requirement, the letter describes a "present dispute" between the parties regarding efforts to sell Lot 1 and Rand-Lewis's reactions to those efforts. (*WasteXperts, supra*, 103 Cal.App.5th at p. 660.)

As to the second requirement, a prelitigation communication may itself be "sufficient to establish [good faith and serious consideration of litigation]; no other evidence of the sending party's state of mind is [necessarily] required." (*WasteXperts, supra*, 103 Cal.App.5th at pp. 662–663, citing *Neville, supra*, 160 Cal.App.4th at p. 1269.) Here, the letter expressly warns that, "[s]hould [Rand-Lewis] persist with such conduct towards potential buyers, [Crestwood] will have no choice but to take appropriate action." We are aware of no means other than legal action that could effectively force Rand-Lewis to change his conduct as the letter requests. Moreover, Crestwood had an attorney send the letter on Crestwood's behalf, further underscoring that the "appropriate action" Crestwood was contemplating was—or at the very least included—legal

9

action, as well as the seriousness with which Crestwood was contemplating such action. "The only reasonable inference from the [letter]" is thus that Crestwood was "contemplating litigation against [Rand-Lewis] seriously and in good faith when the letter was written." (*Neville, supra*, 160 Cal.App.4th at p. 1269, capitalization omitted; see *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293 (*Malin*).)

In arguing to the contrary, Rand-Lewis notes that Crestwood had not officially retained the attorney who drafted the letter. But Rand-Lewis cites no authority, nor do we perceive any reason to necessarily infer, that a communication must be drafted by an attorney retained for a particular purpose in order for the communication to reflect serious consideration of litigation. Rand-Lewis further argues that the "content and tone" of the letter suggests Crestwood was not seriously contemplating litigation. (Boldface & capitalization omitted.) He notes that the letter does not employ legal jargon or cite any legal theory of recovery. But Rand-Lewis again cites nothing to support that a letter must adopt any particular tone or identify a legal theory in order for it to constitute a prelitigation communication. Moreover, we disagree that the letter asking Rand-Lewis to not "scream, yell, bully, accost, or hurl profanities at potential buyers" is so "ambiguous" that it cannot constitute a prelitigation communication.

Rand-Lewis further argues nothing supports that litigation between the parties was "imminent" at the time of the August 9 letter. He cites *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15 (*Edwards*), for the proposition that a prelitigation communication requires "imminent" litigation. (*Id.* at p. 35.) *Edwards* is not factually apt. In *Edwards*,

10

plaintiffs sought damages based on alleged fraud and other misconduct in connection with construction work performed on the foundations of plaintiffs' homes, as well as "rescission of settlement agreements and releases made in connection with their initial claims for repair." (*Id*. at p. 22.) They alleged, inter alia, that their settlements were based on fraudulent reports from some defendants regarding the extent of repairs needed to fix issues with the foundations. (See *id*. at pp. 23–25.) The trial court granted motions in limine to exclude, pursuant to the litigation privilege and the parol evidence rule, "all prelitigation communications made by [certain defendants]" to plaintiffs—including the reports plaintiffs alleged "had fraudulently induced [plaintiffs] to execute the [settlement and] releases." (*Id*. at p. 26.) This ruling had the effect of excluding virtually all communications supporting plaintiffs' fraud and related claims. (See *id*. at pp. 27–28.) The appellate court reversed: "We simply decline to *extend* the privilege, as [defendants] would have us do, to all settlement negotiations. Such an approach would effectively condone fraud and deceit once any tort has been committed or claim has been made, on the theory that litigation 'might' result. We need not encourage fraud in an effort to secure free access to the courts." (*Id*. at p. 37.)

In addition, as Division Four of this court observed in distinguishing *Edwards*, "[t]he court [in *Edwards*] defined 'imminent' to mean an 'actual threat of impending litigation' " and concluded no such threat existed because "the [party] had failed to establish 'anything more than the mere possibility' of litigation." (*Neville, supra*, 160 Cal.App.4th at pp. 1268–1269.) Thus, *Edwards* does not stand for the proposition that litigation

11

must be temporally imminent. Indeed, our analysis is consistent with *Edwards'* own description of its holding: "[R]espondents were required to establish that at the time the communications were made, litigation was not a mere possibility on the horizon, but was actually proposed, seriously and in good faith, as a means of resolving the dispute." (*Id.* at p. 37.) As noted above, the only fair reading of the August 9 letter is that it threatened litigation as a means of resolving Rand-Lewis's alleged interference with Crestwood's efforts to sell nearby lots.

Finally, Rand-Lewis argues that the letter was " 'meant to influence [Rand-Lewis's] conduct,' " not to initiate or prepare for legal redress. We fail to see why threatening to pursue litigation cannot be a means of influencing someone's conduct; to the contrary, cease and desist letters do just that, and courts "[o]rdinarily" consider them prelitigation communications. (*Malin*, *supra*, 217 Cal.App.4th at p. 1293.)

Thus, we conclude the August 9 letter constitutes a prelitigation communication and protected activity under the anti-SLAPP statute.

"A cause of action arises from protected activity where the act underlying the cause of action, 'the wrong complained of,' is itself protected. (*Park* [*v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060]; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.)" (*WasteXperts, supra*, 103 Cal.App.5th at pp. 659–660.) The only "wrong [Rand-Lewis] complain[s] of" through his causes of action (*Park, supra*, at p. 1060) is the August 9 letter and purported republications of the August 9 letter. The defamation cause of action identifies the August 9 letter and purported republications as defamatory. The negligence cause of action alleges these purported publications

12

were also breaches of a duty of care Crestwood owed him. The Business and Professions Code section 17200 cause of action alleges that these same "acts and omissions" constitute an actionable scheme violating that section. And the Unruh Act cause of action alleges that the August 9 letter and purported republications reflect Crestwood intentionally interfering with Rand-Lewis's rights. Thus, all causes of action as alleged in the complaint arise from anti-SLAPP protected activity.[3] (See *ibid.*)

Crestwood thus met its initial burden under the anti-SLAPP statute, shifting the burden to Rand-Lewis to show a substantial likelihood of prevailing on the merits of his claims.

## B. The Litigation Privilege Prevents Rand-Lewis From Establishing That His Claims Have Merit

The litigation privilege, codified in Civil Code section 47, subdivision (b) provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.) Where applicable, the privilege " 'immunize[s] defendants from tort liability.' " (*Action Apartment Assn., supra*, 41 Cal.4th at p. 1242.)

---

[3] The additional publications Rand-Lewis describes in declarations opposing the anti-SLAPP motion, which are not alleged in the complaint, are not relevant for the purposes of our anti-SLAPP analysis, because an anti-SLAPP analysis is based on " 'all allegations of protected activity' " in the complaint (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 934, quoting *Baral, supra*, 1 Cal.5th at p. 396)—not protected activity Rand-Lewis claims he could allege.

13

To be protected by the litigation privilege, a communication must be "in furtherance of the objects of the litigation" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 219 (*Silberg*)), meaning it must "be connected with, or have some logical relation to, the [contemplated or pending] action, i.e., that it not be extraneous to the action" (*id*. at pp. 219–220) and that such legal action be "contemplated in good faith and under serious consideration." (*Action Apartment Assn., supra*, 41 Cal.4th at p. 1251.)

With exceptions inapplicable to our analysis,[4] "[t]he anti-SLAPP statute and the litigation privilege are coextensive. If the statute applies then protection under the litigation privilege is congruent." (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th

---

[4] The California Supreme Court has explained that the litigation privilege and the anti-SLAPP statute serve different purposes. Specifically, "while the purpose of the litigation privilege is to guarantee access to the courts, the purpose of the anti-SLAPP statute is to protect the valid exercise of a person's constitutional rights of free speech and petition from the abuse of the judicial process. (*Flatley* [*v. Mauro* (2006) 39 Cal.4th 299, 324 (*Flatley*)].) Based on these differences, the court concluded that, '[the litigation privilege under] Civil Code section 47 does not operate as a limitation on the scope of the anti-SLAPP statute.' (*Flatley, supra*, at p. 325.) The fact that [the privilege] may apply does not necessarily mean the anti-SLAPP statute applies. [(*Ibid.*)]" (*Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1519.) But the scope of the litigation privilege being narrower than the protection the anti-SLAPP statute confers on a prelitigation communication is not an issue where, as here, the broader protection of a prelitigation communication applies. This broader protection necessarily encompasses the narrower protection the litigation privilege affords. (See *1105 Alta Loma, supra,* 154 Cal.App.4th at p. 1288, fn. 23.)

1273, 1288, fn. 23 (*1105 Alta Loma*), citing *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 64–65 & *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125 [" 'clauses (1) and (2) of section 425.16 subdivision (e) are coextensive with the litigation privilege of Civil Code section 47, subdivision (b)' "].)

For the same reasons we conclude above that the August 9 letter is a prelitigation communication, we conclude the litigation privilege applies to it as well. As discussed above, at the time Crestwood sent the August 9 letter, litigation with Rand-Lewis to stop the behavior the letter describes was "contemplated in good faith and under serious consideration." (*Action Apartment Assn., supra*, 41 Cal.4th at p. 1251.) The letter "[has] some logical relation to . . . the [contemplated] action" in that it threatens such action if Rand-Lewis does not address Crestwood's concerns. (*Silberg, supra,* 50 Cal.3d at p. 220.) It is "not . . . extraneous to the [contemplated] action"—it is the very means by which Crestwood communicated that it was contemplating such action, if necessary. (*Id.* at p, 220.)

The litigation privilege is absolute and provides a complete defense to all Rand-Lewis's causes of action. (See *Silberg, supra,* 50 Cal.3d at p. 216.) Accordingly, Rand-Lewis cannot establish a substantial likelihood of prevailing on any of his claims.

## DISPOSITION

The order is reversed.  Following remand, the court shall enter a new order granting Crestwood's special motion to strike the complaint.  Crestwood shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



KIM, J.

16